UNITED BUYING GROUP, INC. v. LAWRENCE H. COLEMAN AND MORTON COLEMAN

No. 98

(Filed 5 February 1979)

1. **Process § 9 — nonresident defendants — notes guaranteeing account indebtedness — personal jurisdiction — statutory authority**

    G.S. 1-75.4(5)a provided statutory authority for the exercise of personal jurisdiction by the courts of this State over nonresident defendants in an action to recover on promissory notes executed by defendants securing the account indebtedness of a Virginia shoe company to plaintiff buying group, a North Carolina corporation, since the promissory notes were in effect promises to pay for services to be performed in this State by plaintiff, namely the acquisition from manufacturers of shoes for the Virginia company's retail stores.

2. **Constitutional Law § 24.7; Process § 9.1 — personal jurisdiction over nonresident — minimum contacts — invoking benefit of laws of forum state**

    In the absence of some act by which a nonresident defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws, there can be no contact with the forum state sufficient to justify personal jurisdiction over the defendant.

3. **Constitutional Law § 24.7; Process § 9.1— nonresident individual—minimum contacts—consideration of corporate acts**

Where a nonresident defendant is a principal shareholder of a corporation and conducts business in North Carolina as principal agent for the corporation, his corporate acts may be attributed to him for the purpose of determining whether the courts of this State may assert personal jurisdiction over him.

4. **Constitutional Law § 24.7; Process § 9.1— note guaranteeing account—Virginia resident—personal jurisdiction—sufficient minimum contacts**

In an action to recover on promissory notes executed by nonresident defendants guaranteeing the account indebtedness of a Virginia shoe company for merchandise received from plaintiff buying group, a North Carolina corporation, the defendant who was a resident of Virginia had sufficient contacts with North Carolina so that the courts of this State could assert personal jurisdiction over him where he was the president and primary shareholder of the Virginia shoe company and was also a shareholder of plaintiff buying group; the Virginia company ordered substantial quantities of footwear from plaintiff; defendant had attended trade shows in North Carolina for the purpose of selecting shoes to be purchased by the Virginia company; defendant's numerous contacts with plaintiff were aimed at securing plaintiff as a regular supplier of merchandise for his shoe stores; and defendant had access to the courts of this State to enforce the rights growing out of the numerous transactions between himself and plaintiff, including his rights accruing from plaintiff's obligation to supply shoes ordered by defendant, from ownership of stock in plaintiff, and from a security deposit left with plaintiff.

5. **Constitutional Law § 24.7; Process § 9.1— note guaranteeing account—New York resident—personal jurisdiction—insufficient minimum contacts**

In an action to recover on promissory notes executed by nonresident defendants guaranteeing the account indebtedness of a Virginia shoe company for merchandise received from plaintiff buying group, a North Carolina corporation, the defendant who was a resident of New York did not have sufficient contacts with North Carolina to permit the courts of this State to assert personal jurisdiction over him where such defendant was a medical doctor; his only contact with North Carolina was the promissory note he signed in New York which was payable to plaintiff in North Carolina; he owned no shares or interest in the Virginia shoe company or in plaintiff; and the only conceivable benefit to him in signing the note was the personal satisfaction of helping his brother, who was the primary shareholder of the Virginia shoe company.

6. **Constitutional Law § 24.7; Process § 9.1— minimum contacts—no per se rule**

The presence of minimum contacts is not to be determined by automatic application of per se rules; rather, the existence of minimum contacts depends upon the particular facts of each case.

7. **Constitutional Law § 24.7; Process § 9.1— nonresident's guaranty of debt owed N.C. corporation—minimum contacts**

A nonresident's mere act of signing a guaranty or endorsement of a debt owed to a North Carolina creditor does not per se constitute a sufficient contact upon which to base *in personam* jurisdiction over the nonresident. Rather,

the circumstances surrounding the signing of such obligation must be closely examined in each case to determine whether the quality and nature of the nonresident's contacts with North Carolina justify the assertion of personal jurisdiction over him in an action on the obligation.

Justice BROCK did not participate in the consideration or decision of this case.

ON petition for discretionary review of the decision of the Court of Appeals, 37 N.C. App. 26, 245 S.E. 2d 402 (1978), affirming in part, reversing in part judgment of *Griffin, J.*, entered 24. May 1977 in MECKLENBURG Superior Court.

Plaintiff United Buying Group, Inc. (hereafter Buying Group) is a North Carolina corporation. Defendant Lawrence H. Coleman is a residant of Virginia. Defendant Morton Coleman, Lawrence Coleman's brother, is a medical doctor and resident of New York. Lawrence Coleman was the primary shareholder and president of Coleman Shoe Company (hereafter Coleman's), a Virginia corporation that is now insolvent. Lawrence Coleman also owned stock in plaintiff Buying Group.

In 1975 and 1976 Coleman's placed orders for shoes with Buying Group. To secure Coleman's account indebtedness with Buying Group, Lawrence and Morton Coleman individually signed separate "conditional promissory notes" which guaranteed payment to Buying Group for merchandise ordered on behalf of Coleman's. Lawrence Coleman guaranteed payment up to $36,718.75. Morton Coleman guaranteed payment up to $25,000.00.

This is an action by Buying Group to collect $14,609.24 plus interest, costs and attorney fees due under the terms of the conditional promissory note signed by each defendant. Defendants appeared by counsel and pursuant to Rule 12 of the North Carolina Rules of Civil Procedure filed a motion to dismiss for lack of jurisdiction over the person of defendants and for insufficiency of service of process. In this appeal we are concerned only with the contention that the trial court lacked personal jurisdiction over defendants.

After considering affidavits and exhibits the trial court made findings of fact and concluded that the State of North Carolina could exercise personal jurisdiction over Lawrence Coleman but not Morton Coleman. Accordingly, trial court denied Lawrence

Coleman's motion for dismissal and dismissed the case as to Morton Coleman.

On plaintiff's appeal the Court of Appeals held that personal jurisdiction could be exercised over both defendants. Both defendants appealed on constitutional grounds and, in the alternative, petitioned for discretionary review of the decision of the Court of Appeals. The petition was allowed by this Court.

*Richard N. Weintraub, attorney for plaintiff appellee.*

*Fleming, Robinson, Bradshaw & Hinson, P.A., by Michael A. Almond, for defendant appellants.*

HUSKINS, Justice.

[1] The sole question posed for decision is whether the trial court acquired in personam jurisdiction over defendants Lawrence H. Coleman and Morton Coleman pursuant to G.S. 1-75.4(5). To resolve this question we employ the two-step analysis suggested in *Dillon v. Funding Corp.*, 291 N.C. 674, 231 S.E. 2d 629 (1977). First, we determine whether G.S. 1-75.4(5) of our "long arm" statute confers jurisdiction upon the superior court, which concededly has subject matter jurisdiction, to entertain this action against defendants. If our "long arm" statute confers in personam jurisdiction over defendants we must next determine whether the exercise of such power by the courts of North Carolina over these defendants violates due process of law.

G.S. 1-75.4(5)a confers in personam jurisdiction upon the courts of this State over a person served, pursuant to Rule 4(j) of the Rules of Civil Procedure, with adequate process in any action which "[a]rises out of a promise, made anywhere to the plaintiff . . . by the defendant . . . to pay for services to be performed in this State by the Plaintiff."

The "conditional promissory notes" out of which this action arises are promises by Lawrence H. Coleman and Morton Coleman to pay for services to be performed in this State by Buying Group, plaintiff in this action. Buying Group is a North Carolina corporation which purchases footwear from manufacturers and sells said footwear to a group of member retail stores. Buying Group processes all orders from customers and performs most of its services in North Carolina. The notes signed by Lawrence and

Morton Coleman promise to pay, up to designated amounts, for any orders of merchandise placed by Coleman's, a member of Buying Group, for which Coleman's has failed to make payment. In effect, the Coleman brothers promised to pay for services, namely the acquisition of shoes from manufacturers, which Buying Group performed for one of its member retail stores, Coleman's. These facts bring this case squarely within the scope of the quoted statute and thus confer upon the superior court in personam jurisdiction over Lawrence and Morton Coleman.

Defendants Lawrence and Morton Coleman, however, are not residents of this State. Lawrence Coleman resides in Virginia and Morton Coleman resides in New York. Accordingly, we proceed to determine whether the assertion of in personam jurisdiction in this action offends due process of law in violation of the Fourteenth Amendment.

The limitations imposed by the Due Process Clause upon the assertion of in personam jurisdiction by state courts were recently discussed by the United States Supreme Court in *Kulko v. California Superior Court*, 436 U.S. 84, 56 L.Ed. 2d 132, 98 S.Ct. 1690 (1978):

"The Due Process Clause of the Fourteenth Amendment operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants. It has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant. The existence of personal jurisdiction, in turn, depends upon the presence of reasonable notice to the defendant that an action has been brought, and a sufficient connection between the defendant and the forum State as to make it fair to require defense of the action in the forum." (Citations omitted.)

Defendants do not dispute the adequacy of the notice they received; rather, they contend that their connection with the State of North Carolina "is too attenuated, under the standards implicit in the Due Process Clause of the Constitution, to justify imposing upon [them] the burden and inconvenience of defense in [North Carolina]." *Kulko v. California Superior Court, supra.*

[2]  The constitutional standard to be applied in determining whether a State may assert personal jurisdiction over a nonresident defendant is found in the landmark case of *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L.Ed. 95, 66 S.Ct. 154 (1945): "[D]ue process requires only that in order to subject a [nonresident] defendant to a judgment in personam, . . . he have certain minimum contacts with [the forum State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" We noted in *Chadbourn, Inc. v. Katz*, 285 N.C. 700, 208 S.E. 2d 676 (1974), that the "minimum contacts" standard delineated in *International Shoe* did not mean that all due process restrictions on the personal jurisdiction of state courts had been removed. In *Chadbourn*, quoting from *Hanson v. Denckla*, 357 U.S. 235, 2 L.Ed. 2d 1283, 78 S.Ct. 1228 (1958), we stressed that while application of the minimum contacts standard "will vary 'with the quality and nature of defendant's activity,' . . . it is essential in each case that there be some act by which defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws.'" Absent such purposeful activity by defendant in the forum State, there can be no contact with the forum State sufficient to justify personal jurisdiction over defendant. *Accord, Hanson v. Denckla, supra; Chadbourn, Inc. v. Katz, supra.*

We now turn to application of the minimum contacts standard to the facts of this case.

[3]  At the outset we must determine whether Lawrence Coleman's corporate acts as president of Coleman's can be imputed to him for the *sole* purpose of determining whether he had sufficient contacts with North Carolina. We hold that where, as in this case, defendant is a principal shareholder of the corporation and conducts business in North Carolina as principal agent for the corporation, then his corporate acts may be attributed to him for the purpose of determining whether the courts of this State may assert personal jurisdiction over him. *See generally, Costin v. Olen*, 449 F. 2d 129 (5th Cir. 1971); *Odell v. Signer*, 169 So. 2d 851 (Fla. App. 1964).

[4]  Does Lawrence H. Coleman have sufficient contact with North Carolina such that it is reasonable and fair to require him

to defend in this State against the action brought on the personal guaranty he gave to Buying Group? An examination of the record leads us to conclude that he does.

The conditional promissory note signed by Lawrence Coleman guarantees the account indebtedness of Coleman's for merchandise ordered or received from Buying Group up to $36,718.75. Lawrence Coleman was the president and primary shareholder of Coleman's. Lawrence Coleman was a shareholder in Buying Group. Coleman's made a $2000 security deposit with Buying Group to secure its account indebtedness. During 1975 and 1976 Coleman's ordered substantial quantities of footwear from Buying Group. Lawrence Coleman has attended trade shows in North Carolina for the purpose of selecting shoes to be purchased by Coleman's.

It is evident from these facts that the contacts between nonresident Lawrence Coleman and resident Buying Group were not casual or fortuitous. Lawrence Coleman's numerous contacts with Buying Group, as primary owner and president of Coleman's and as individual guarantor, were aimed at securing Buying Group as a regular supplier of merchandise for his shoe stores. In the process of establishing this continuing relationship with Buying Group, Lawrence Coleman purposefully invoked the benefits and protection of the laws of North Carolina. Lawrence Coleman had access to the courts of this State to enforce the rights growing out of the numerous transactions between himself and Buying Group. For example, the rights accruing to Lawrence Coleman from Buying Group's obligation to supply shoes ordered by Coleman, from ownership of stock in Buying Group, from the security deposit left with Buying Group were all enforceable in this State.

Viewed in this context it is apparent that the "conditional promissory note" signed by Lawrence Coleman was but one of numerous contacts in the ongoing relationship between Lawrence Coleman and Buying Group. Under these circumstances the assumption of in personam jurisdiction over Lawrence Coleman by the courts of this State does not offend traditional notions of fair play and substantial justice within the contemplation of the Due Process Clause of the Fourteenth Amendment.

[5] Does Morton Coleman have sufficient contacts with North Carolina such that it is reasonable and fair to require him to de-

fend in this State against the action brought on the conditional promissory note he gave to Buying Group? An examination of the record leads us to conclude that he does not.

Morton Coleman's only contact with this State was the conditional promissory note he signed in New York which was payable to plaintiff in North Carolina. Morton Coleman is a medical doctor residing in New York. At the time he signed the note Morton Coleman owned no shares of stock or any interest whatsoever in Coleman's or Buying Group. Under these circumstances we fail to see how Dr. Coleman purposefully availed himself of the benefits and protection of North Carolina's laws.

By agreeing to guarantee Coleman's account indebtedness with Buying Group, Dr. Coleman incurred a potential liability to a North Carolina corporation with no attending commercial benefits to himself enforceable in the courts of North Carolina. The only conceivable benefit accruing to Dr. Coleman as a result of signing the note was the personal satisfaction of helping his brother Lawrence. Needless to say, such a benefit, while substantial, does not give rise to legal rights enforceable in the courts of North Carolina. The attainment of such personal gratification can hardly be said to constitute a purposeful invocation of the benefits and protection of North Carolina's laws under the minimum contacts standard articulated in *International Shoe* and its progeny.

Viewed in this context it is apparent that the "conditional promissory note" signed by Dr. Coleman constitutes an isolated, fortuitous contact with Buying Group, a North Carolina corporation that his brother Lawrence happened to be doing business with. Accordingly, we conclude that assumption of in personam jurisdiction over Morton Coleman by the courts of North Carolina would violate due process of law.

[6] The Court of Appeals relied exclusively on the following language from *Trust Co. v. McDaniel*, 18 N.C. App. 644, 197 S.E. 2d 556 (1973), in concluding that in personam jurisdiction could be asserted over both Morton and Lawrence Coleman consistent with due process of law:

> "Where the nonresident defendant promises to pay the debt of another, which debt is owed to North Carolina creditors, such promise is a contract to be performed in

North Carolina and is sufficient minimal contact upon which this State may assert personal jurisdiction over defendant."

We hold that reliance on the quoted language is misplaced. The presence of minimum contacts is not to be determined by automatic application of per se rules such as the one adopted in *McDaniel*; rather, the existence of minimum contacts depends upon the particular facts of each case. *Chadbourn, Inc. v. Katz, supra. Accord, Farmer v. Ferris*, 260 N.C. 619, 133 S.E. 2d 492 (1963). The impropriety of utilizing per se rules to determine whether minimum contacts are present in a given situation was recently discussed by the United States Supreme Court in *Kulko v. California Superior Court, supra*:

> "Like any standard that requires a determination of 'reasonableness' the 'minimum contacts' test of International Shoe is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present. . . . [T]his determination is one in which few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.' " (Citations omitted.)

*Accord, Shaffer v. Heitner*, 433 U.S. 186, 53 L.Ed. 2d 683, 97 S.Ct. 2569 (1977); *International Shoe Co. v. Washington, supra.*

[7] The rule adopted in *McDaniel v. Trust Co., supra*, that a guaranty or endorsement by a nonresident of a debt owed to a North Carolina creditor per se constitutes a sufficient minimal contact upon which this State may assert personal jurisdiction over defendant is rejected as contrary to the minimum contacts rule developed by *International Shoe* and its progeny. The mere *act* of signing such a guaranty or endorsement does not in and of itself constitute a sufficient contact upon which to base in personam jurisdiction over a nonresident. Rather, the circumstances surrounding the signing of such obligation must be closely examined in each case to determine whether the quality and nature of defendant's contacts with North Carolina justify the assertion of personal jurisdiction over him in an action on the obligation.

For the reasons stated the judgment of the trial court must be reinstated. To that end the result reached by the Court of Appeals is

Affirmed as to Lawrence Coleman;

Reversed as to Morton Coleman.

Justice BROCK did not participate in the consideration or decision of this case.