LUELLA S. HOLT v. DAVID R. HOLT II

No. 7828DC722

(Filed 5 June 1979)

1. **Process § 9; Constitutional Law § 26.6— action against nonresident—foreign divorce decree—no personal jurisdiction**

In an action by a nonresident plaintiff against a nonresident defendant to recover alimony, child support and other obligations of a separation agreement incorporated into a Missouri divorce decree and to attach property owned by defendant in North Carolina, the courts of this State did not obtain jurisdiction over the person of the nonresident defendant under the Full Faith and Credit Clause of the United States Constitution by the enforcement of a valid *in personam* judgment of one state in the courts of another state, since jurisdiction over defendant could be obtained under this theory only if plaintiff first obtained a judgment in the Missouri courts that defendant is in arrears for a sum certain on the ordered payments and then brought suit in North Carolina on such judgment.

2. **Process § 9.1; Courts § 2.2; Constitutional Law § 26.6— action against nonresident—foreign divorce decree—realty in N. C.—minimum contacts with case—quasi in rem jurisdiction**

In an action by a nonresident plaintiff against a nonresident defendant to recover alimony, child support and other obligations due under a separation agreement incorporated into a Missouri divorce decree and to attach realty owned by defendant in North Carolina, defendant's North Carolina realty had sufficient "minimum contacts" with the case to give the courts of this State *quasi in rem* jurisdiction by constructive service where (1) defendant purchased the North Carolina realty and executed deeds of trust thereon shortly after the Missouri decree was entered and began failing to make the ordered payments the next month, thereby electing to expend a portion of his income on payments for the realty rather than making payments under the Missouri decree, and (2) the claim by plaintiff to the North Carolina realty is a part of "the source of the underlying controversy between the plaintiff and defendant" since one of the purposes of the original action was to determine property rights between the parties and that continues to be the purpose of the North Carolina action.

Judge CLARK dissenting.

APPEAL by defendant from *Allen (C. Walter), Judge.* Order entered 29 June 1978 in District Court, BUNCOMBE County. Heard in the Court of Appeals 26 April 1979.

Plaintiff filed a complaint praying that North Carolina accord full faith and credit to a divorce judgment entered in the State of Missouri. She also prayed for an award of accrued alimony and child support with interest, a judgment for $10,400 for certain alleged debts and obligations under a separation agreement, an order for future alimony and child support payments, security for such obligations, an injunction to prevent defendant from disposing of North Carolina real property, and attorney's fees and costs.

Plaintiff alleged that she is a resident of Missouri and defendant is a resident of Alabama but owns real property in North Carolina which could be used to satisfy the divorce judgment.

The separation agreement between plaintiff and defendant, in which defendant, *inter alia,* agreed to pay $150 per month alimony, and $150 per month child support for each of the three children, states that the agreement should be "presented to the Court for approval and referred to in the [divorce] decree but it shall not be set forth in full in the decree." The divorce decree states that the separation agreement "is not unconscionable and that the same should be approved and set out in the decree." It orders that, "the separation agreement and property settlement . . . be and the same is hereby approved and ordered set forth in the decree."

Plaintiff filed a notice of *lis pendens* and procured an order of attachment pursuant to G.S. 1-440.2 and 1-440.3(1) against defendant's North Carolina real property.

Defendant filed a motion to dismiss pursuant to G.S. 1A-1, Rule 12(b)(2) on the ground that the court lacked jurisdiction over the person of defendant. The trial court denied the motion and defendant appealed.

*Shuford, Frue & Best, by Ronald K. Payne, for plaintiff appellee.*

*Stephen L. Barden III for defendant appellant.*

CARLTON, Judge.

Ordinarily, there is no right of appeal from the refusal of a motion to dismiss. The refusal to dismiss the action generally will not seriously impair any right of defendant that cannot be corrected upon appeal from final judgment. 1 Strong, N.C. Index 3d, Appeal and Error, § 6.6, p. 200; *Auction Co. v. Myers*, 40 N.C. App. 570, 253 S.E. 2d 362 (1979). However, G.S. 1-277(b) provides in part that an interested party "shall have the right of *immediate appeal* from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant." (Emphasis added.) Hence, the question for determination on this appeal is whether the trial court properly denied defendant's motion to dismiss pursuant to G.S. 1A-1, Rule 12(b)(2) on the ground that the court lacked jurisdiction over the person of defendant.

The contentions of the parties in their briefs evolve around two theories under which they perceive jurisdiction might be asserted over the defendant: (1) under the Full Faith and Credit Clause of the United States Constitution, by the enforcement of a valid *in personam* judgment of one state in the courts of another state, and (2) by jurisdiction *quasi in rem* acquired by constructive service where defendant's property has "minimum contacts" with the case.

[1] In contending that jurisdiction was properly exercised over the defendant under the first theory noted above, plaintiff relies primarily on a statement and a footnote by the United States Supreme Court in *Shaffer v. Heitner*, 433 U.S. 186, 210, 97 S.Ct. 2569, 2583, 53 L.Ed. 2d 683, 702 (1977):

Moreover, we know of nothing to justify the assumption that a debtor can avoid paying his obligations by removing his property to a State in which his creditor cannot obtain personal jurisdiction over him. The Full Faith and Credit Clause, after all, makes the valid in personam judgment of one State enforceable in all other States.

In a footnote to that statement, the Court added:

Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to

realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter. . . .

We do not believe this dictum of the Supreme Court embraces the facts disclosed by the record before us. To proceed under this principle, we think it would be essential for plaintiff to first obtain a judgment in the Missouri courts that defendant is in arrears for a sum certain on the ordered payments. From that subsequent judgment, North Carolina courts could then take proper notice that defendant is a "debtor" of plaintiff and the action would lie under this theory. The present posture of the case, however, discloses that defendant is at most only an *obligor* of plaintiff.

In light of this portion of our holding rejecting the argument that jurisdiction might be obtained over the defendant under the first theory noted above, we deem it unnecessary to discuss the question of whether the Missouri decree is entitled to full faith and credit in North Carolina. This is the matter dealt with most extensively in the briefs of both parties. Under the rejected first theory, a resolution of that question would have been essential. The question of full faith and credit is also the ultimate question to be determined in this lawsuit. For that reason, the parties would undoubtedly prefer that we deal with that question here. We think it would be improper for us to do so. It is our function in the judicial process to review matters first decided by the trial courts. The trial court's order, without any findings of fact or conclusions of law, merely denied the defendant's motion to dismiss pursuant to G.S. 1A-1, Rule 12(b)(2). Indeed, absent a request by a party to do so, the trial court was not required to make findings of fact or conclusions of law in ruling on the motion. G.S. 1A-1, Rule 52(a)(2).

Since the trial court did not make findings of fact or conclusions of law in its order, we assume that it ruled only that the District Court of Buncombe County had jurisdiction over the person of the defendant so that his Rule 12(b)(2) motion should be denied. We do not believe that we should interpret the trial court's order to rule that the Missouri decree is entitled to full faith and credit in North Carolina. Again, that is the ultimate and crucial question to be answered in this lawsuit. We think it would

Holt v. Holt

disrupt the judicial process for us to address this question here as suggested by the briefs of the parties. To do so would mean that we would be doing what appellate courts are not in the business of doing: We would be *initially* determining questions which must first make their way through the trial courts. For example, in urging that North Carolina should not accord full faith and credit to the Missouri decree, defendant argues that the portion of the decree relating to alimony and other debts is not enforceable because it is merely contractual and that the portion of the decree relating to child support is subject to annulment by the Missouri courts. These are obviously questions which must be considered first at the trial level and we do not interpret the trial court's order denying the defendant's Rule 12(b)(2) motion to embrace them.

[2]   Nor do we believe that G.S. 1-277(b), allowing immediate appeal from an adverse ruling as to jurisdiction of the court over the person or property of the defendant, was enacted as a means of allowing litigants to seek advisory opinions from the appellate courts before necessary questions are resolved by the trial courts. That statute simply allows a defendant, in an action of this nature, a means of immediate appellate determination as to whether the trial court has jurisdiction so that it can then proceed to answer the questions raised by the lawsuit. We therefore decline to rule on the ultimate questions pertaining to full faith and credit of the Missouri decree and turn now to the remaining question we consider raised by this appeal: Was jurisdiction *quasi in rem*, acquired by constructive service on the basis of defendant's property having "minimum contacts" with the case, properly obtained over the defendant?

Though we reach a different result, we think this case is controlled by Shaffer, *supra*, applied by this Court in *Balcon, Inc. v. Sadler*, 36 N.C. App. 322, 244 S.E. 2d 164 (1978). In *Balcon*, the plaintiff was a Maryland corporation. It was neither domesticated nor did business in North Carolina. Defendant was an individual resident of Maryland who owned real property in North Carolina. Plaintiff brought suit on account and began ancillary proceeding for attachment of defendant's real property pursuant to G.S. 1-440.1(b). Judge Clark, writing for this Court, stated:

> The plaintiff and defendant were nonresidents of this State, and the action arose in Maryland. Defendant owned

Holt v. Holt

real estate in Chowan County; his ownership of this realty did not give the court jurisdiction over the defendant's person. The basis of the court's jurisdiction must rest on plaintiff's proceeding to attach defendant's realty under G.S. 1-440.1. The realty had no relation to the account which is the subject matter of the action. The attachment is a *quasi in rem* proceeding, instituted by plaintiff for the purpose of bringing the realty of the nonresident defendant under the jurisdiction of, and subject to the judgment of, the court. The attachment proceeding is ancillary and does not give the court *in personam* jurisdiction over the defendant. But G.S. 1-75.8(4) gives the court jurisdiction *quasi in rem* when "the defendant has property within this State which has been attached or has a debtor within the State who has been garnished.

The opening sentence of G.S. 1-75.8 is as follows: "A court of this State having jurisdiction of the subject matter *may* exercise jurisdiction in rem or quasi in rem on the grounds stated in this section. . . ." (Emphasis added.) Thus, it appears that the exercise of such jurisdiction is a matter for the discretion of the court. See Anno. 90 A.L.R. 2d 1109; 20 Am. Jur. 2d, Courts, §§ 93, 172; 21 C.J.S., Courts, § 77(b), pp. 116-118. It is clear, however, in the case before us that the trial court found that it did not have jurisdiction, and not that it in its discretion refused to exercise it.

The foregoing statute and the case law relating to *in rem* jurisdiction has been based on the decisions in *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1878), which for a hundred years has provided the conceptual framework for jurisdictional matters in the United States. *Pennoyer* asserted that jurisdiction was defined by two principles: (1) that every state possesses exclusive jurisdiction and sovereignty over persons and property *within* its territory, and (2) that a state cannot exercise direct jurisdiction over persons or property *without* its territory. The decision recognized that the states must comply with the standards of due process but perceived the requirements for jurisdiction over property as conceptually distinct from those applicable to personal jurisdiction. The mere presence of property was sufficient for *in rem* jurisdiction, whereas the presence of the defendant's person

within the state was essential for *in personam* jurisdiction. These bifurcated jurisdictional standards have been maintained over the years, with the state courts exercising jurisdiction based on the presence of property in actions *in rem* and *quasi in rem* and exercising personal jurisdiction based on the presence of the person.

The concept of *in personam* jurisdiction has been adjusted by the courts during the past century to meet the needs of a mobile society by judicially circumventing the presence of the person as the basis for jurisdiction with the fictions of implied consent and constructive presence, based on activities in the state, i.e., operating a motor vehicle or doing business.

But the fiction-eroded standards for *in personam* jurisdiction were supported two decades ago by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945), which held that "due process requires only that in order to subject a defendant to a judgment *in personam*, if he is not present within the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

Recently, in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed. 2d 683 (June 1977), the Supreme Court held for the first time that the standards of fairness, reasonableness and substantial justice and the minimum contacts required by *International Shoe* should govern actions *in rem* as well as *in personam*. The court suggested that all of the circumstances relating to the controversy should be considered in determining reasonableness.

In *Shaffer*, the asserted basis of jurisdiction was the statutory presence of defendants' property in Delaware, by statute the situs for ownership of stock in a Delaware corporation. The action was a stockholder's derivative suit by a nonresident against nonresident officers and directors of a Delaware corporation for breach of corporate duties. In the case *sub judice* the basis of jurisdiction was real property. Where real property has some relation to the controversy, the interest of the State in realty within its borders, and the

defendant's substantial relationship with the forum should support jurisdiction. But in the case before us the controversy had no relation to the realty, and *Shaffer* clearly held that jurisdiction could not be based on the mere presence of property. We interpret *Shaffer* as controlling the case *sub judice* if *Shaffer* has retroactive effect.

. . . .

G.S. 1-75.8(4) provides that jurisdiction *in rem* or *quasi in rem* may be invoked "When the defendant has property within this State which has been attached or has a debtor within the State who has been garnished. Jurisdiction under this subdivision may be independent of or supplementary to jurisdiction acquired under subdivisions (1), (2) and (3) of this section." Clearly this statute does not meet the due process standards required by the *Shaffer* decisions and is unconstitutional. But G.S. 1-75.8(5) extends *in rem* and *quasi in rem* jurisdiction to any action "in which in rem or quasi in rem jurisdiction may be constitutionally exercised." This statute supports such jurisdiction over the property within the state of a nonresident if due process standards are met. *Id.* at 324-327, 244 S.E. 2d at 166-167.

In holding that the proper due process standard for a determination of jurisdiction over the interests of persons is the "minimum contacts" standard elucidated in *International Shoe,* the United States Supreme Court made these statements in *Shaffer* which we deem pertinent to the facts disclosed by the record before us:

This . . . does not ignore the fact that the presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation. For example, when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction. In such cases, the defendant's claim to property located in the State would normally indicate that he expected to benefit from the State's protection of his interest. The State's strong interests in assuring the marketability of property within its

borders and in providing a procedure for peaceful resolution of disputes about the possession of that property would also support jurisdiction, as would the likelihood that important records and witnesses will be found in the State.

. . . .

The primary rationale for treating the presence of property as a sufficient basis for jurisdiction to adjudicate claims over which the State would not have jurisdiction if *International Shoe* applied is that a wrongdoer "should not be able to avoid payment of his obligations by the expedient of removing his assets to a place where he is not subject to an *in personam* suit." Restatement § 66, Comment a. *Id.* at 207, 210, 97 S.Ct. at 2582, 2583, 53 L.Ed. 2d at 700, 701.

In applying the principles first set out in *International Shoe*, extended in *Shaffer*, and applied by this Court in *Balcon*, to the facts disclosed by the record before us, we hold that the defendant and his North Carolina property do have "minimum contacts" to the controversy to the extent that due process standards have been met in obtaining jurisdiction over the defendant. As in *Balcon*, both plaintiff and defendant here are nonresidents of this State and defendant owns real estate within the State. In both cases, the basis of the court's jurisdiction must rest on plaintiff's proceeding to attach defendant's realty under G.S. 1-440.1 in order to give the court jurisdiction *quasi in rem* pursuant to G.S. 1-75.8(4). Here, however, we believe that the controversy *does* have "some relation" to the North Carolina real estate owned by defendant. Granted, there is no direct relation between the parties' separation agreement and divorce decree entered in Missouri and the real property owned by the defendant in North Carolina. However, one of the *original purposes* of this action was that of determining property rights between these parties at the time of their separation and subsequent divorce and that *continues* to be the purpose of the action filed in North Carolina. The record discloses several facts which lead us to find a relationship between defendant's North Carolina property and the controversy:

1. The Missouri decree was entered on 10 March 1975 and the defendant allegedly purchased the property in Buncombe County on 4 April 1975. In other words, just 25 days after being ordered to begin making substantial payments to plaintiff, defend-

ant came to North Carolina and purchased property alleged to be worth approximately $70,000. The plaintiff alleges that two deeds of trust were executed by defendant on the North Carolina property and that defendant has failed to make payments pursuant to the divorce decree since May 1975. Since the record discloses that defendant is a resident of Alabama, and that he began failing to make the ordered payments the very month following the purchase of the North Carolina property, we must conclude that he has elected to expend at least a portion of his income on making payments on North Carolina real estate on which he does not reside in lieu of making payments under the Missouri decree for the support of his wife and children.

2. Another contact between defendant, North Carolina real estate and this controversy took place *at the time* the separation agreement was entered into by the parties and subsequently incorporated into the divorce decree. The record discloses that defendant agreed, in the separation agreement, to deed to plaintiff three undeveloped lots owned by the parties at Montreat, North Carolina. Moreover, pursuant to the separation agreement, the defendant was to be entitled to keep and retain as his separate property a house owned by the parties jointly at Montreat, North Carolina. While the parties owned property in Missouri, Florida and North Carolina, it is obvious that their contacts with North Carolina were extensive. The separation agreement spells out in detail the personal property in the Montreat house to be assigned to the plaintiff and certain furniture and furnishings to be assigned to the defendant. We therefore must disagree with the statement of the defendant in his motion to dismiss that "[he] has had no contacts with the state of North Carolina in any way relating to the cause of action of this case. . . ."

In applying the facts disclosed by this record to the statements enunciated in *Shaffer* quoted above, we think that the claim by the plaintiff to the North Carolina property is certainly a part of "the source of the underlying controversy between the plaintiff and the defendant." In addition to terminating the marital relationship, the "underlying controversy" between these parties was obviously that of determining their respective property rights. We think that defendant's purchase of the North Carolina property was so close in time to entry of the Missouri decree attempting to effect a settlement of property rights be-

tween the parties that "minimum contacts" between the controversy and North Carolina were clearly established.

With respect to the second quoted statement from *Shaffer* above, we concede that plaintiff has not alleged that defendant removed any assets to North Carolina in order to avoid payment of his obligations. Nor do we impugn such a motive to defendant. However, not allowing plaintiff to obtain jurisdiction over defendant (who left the state of his domicil less than one month after being ordered to make such payments to his wife and children, purchased real estate in North Carolina and incurred financial obligations as a result thereof) could clearly result in defendant being allowed to avoid the court ordered payments by purchasing North Carolina real estate. We do not think that the principles established in *Shaffer* and *Balcon* intended such a result. Clearly, the cause of action here was a direct and foreseeable outgrowth of defendant's contacts with this state.

In *Balcon* the real estate had absolutely no relation to the controversy nor had any previous relationship been established by the parties to the controversy and the State of North Carolina. In *Shaffer*, the Supreme Court stated, "appellants have simply had nothing to do with the State of Delaware." *Id.* at 216, 97 S.Ct. at 2586, 53 L.Ed. 2d at 705. For the reasons stated above, we think the facts of the case *sub judice* are clearly distinguishable from those in *Balcon* and *Shaffer* and that the result must be different. *See* the concurring opinions in *Shaffer, supra.*

We are advertent to the clear holding in *Shaffer* that presence of the *res* alone is not sufficient to confer jurisdiction on a nonresident defendant. We agree that the mere presence of defendant's property in North Carolina, in an action of this nature, should not confer jurisdiction on him. The several other factors noted above must be added to the realty's presence in North Carolina to establish the required contacts.

We find no clear formula from our review of state and federal appellate decisions. We think all decisions evolve ultimately into a test of reasonableness, fairness and justice in light of all circumstances surrounding the action. As stated by our Supreme Court in *Farmer v. Ferris*, 260 N.C. 619, 625, 133 S.E. 2d 492, 497 (1963):

Holt v. Holt

Whether the type of activity conducted within the State is adequate to satisfy the requirements depends upon the facts of the particular case. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 445, 96 L.Ed. 485, 492. It seems, according to the most recent decisions of the United States Supreme Court, that the question cannot be answered by applying a mechanical formula or rule of thumb, but by ascertaining what is fair and reasonable and just in the circumstances. In the application of this flexible test, a relevant inquiry is whether defendant engaged in some act or conduct by which it may be said to have invoked the benefits and protections of the law of the forum. (Citations omitted.)

In summary, we think the parties established the "minimum contacts" with North Carolina as contemplated by *International Shoe*, such that jurisdiction over the person of the defendant could be obtained by constructive service. Surely, on the facts before us, "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe, supra*, 326 U.S. at 316 quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 85 L.Ed. 278, 61 S.Ct. 339 (1940). *See also Kulko v. California Superior Court*, 436 U.S. 84, 56 L.Ed. 2d 132, 98 S.Ct. 1690 (1978); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 2 L.Ed. 2d 223, 78 S.Ct. 199 (1957); *Buying Group, Inc. v. Coleman*, 296 N.C. 510, 251 S.E. 2d 610 (1979).

Hence, we hold that the interests of the State in realty within its borders and the defendant's substantial relationships with the forum support the trial court's order that it had jurisdiction over the person of the defendant.

We have examined the defendant's remaining assignment of error and find it devoid of merit.

The order of the court below is

Affirmed.

Judge VAUGHN concurs.

Judge CLARK dissenting.

Judge CLARK dissenting.

The circumstances relating to the controversy between plaintiff and defendant and the realty which defendant purchased in this State after the separation agreement and the support judgment entered in Missouri do not provide sufficient "minimum contacts" to meet the due process standards required by *Shaffer v. Heitner, supra.* The obligation of the defendant to plaintiff should be determined by a court of competent jurisdiction and its judgment enforced in this State under the Full Faith and Credit Clause by proceeding *in rem* against defendant's realty.