HILTON B. FRASER v. L. GLENN LITTLEJOHN

No. 8926SC112

(Filed 5 December 1989)

1. **Constitutional Law § 26 (NCI3d)— valid foreign judgment—jurisdiction over nonresident defendant pursuant to full faith and credit clause**

    The trial court had jurisdiction over defendant based on the full faith and credit theory where plaintiff obtained three valid money judgments against defendant in Florida in 1976, and defendant did not contest the Florida court's assertion of subject matter or personal jurisdiction in those actions, did not allege fraud concerning them, and did not object to the trial court's finding of fact that plaintiff's Florida judgments were valid.

    **Am Jur 2d, Constitutional Law § 863.**

2. **Process § 14.3 (NCI3d)— nonresident defendant—sufficiency of contacts with North Carolina**

    Defendant's continuous and systematic contacts with North Carolina between 1983 and 1988 satisfied the statutory and constitutional requirements necessary to find personal jurisdiction in this case where defendant came to North Carolina in 1983 and completed tax returns for customers of a tax service at its Charlotte offices for three years; he was the personal, financial and property manager of a Charlotte resident; he resided in her home on a continual basis from the spring of 1984 until her death in 1986; during 1984 he received in excess of $20,000 for managing the resident's North Carolina property; he prepared and used a letterhead stating his name and giving a North Carolina address; he purchased real estate in North Carolina and all correspondence with regard thereto, including tax billings, was sent to him at a Charlotte address; he was beneficiary of both real and personal property, valued in excess of $300,000, of the North Carolina resident's estate; and at the time this action was commenced defendant did not live in North Carolina but he still owned property in this state, was a named beneficiary under a North Carolina resident's will, and retained a North Carolina attorney to repre-

FRASER v. LITTLEJOHN

[96 N.C. App. 377 (1989)]

sent his interest in the estate. N.C.G.S. § 1-75.4(1)(d); N.C.G.S. § 1-75.8(5).

**Am Jur 2d, Process § 45.**

APPEAL by defendant from Order entered 31 August 1988 by *Judge Frank W. Snepp, Jr.* in MECKLENBURG County Superior Court. Heard in the Court of Appeals 9 October 1989.

In this action plaintiff Fraser seeks monetary relief from defendant Littlejohn, based upon North Carolina's enforcement of three valid out-of-state money judgments plaintiff won against defendant in Florida. Simultaneously with the filing of the complaint, appellee filed an Affidavit in Attachment Proceeding and issued a Notice of Levy and Garnishment Proceedings, thereby garnishing appellant's interest as a devisee and legatee of an estate of a North Carolina resident. Littlejohn was personally served with Summons, Verified Complaint, Affidavit of Attachment and Order of Attachment, but failed to answer the complaint. Appellee filed a motion for Entry of Default and Default Judgment, and the Assistant Clerk for Superior Court of Mecklenburg County entered a judgment for him of $108,081.83 on 11 March 1988. Littlejohn moved under N.C.G.S. § 1A-1, Rule 60(b)(4), to set aside the default judgment and to dismiss the complaint under N.C.G.S. § 1A-1, Rule 12(b)(2), on the grounds that the court lacked personal jurisdiction over him. Appellant also filed a Motion Seeking to Set Aside the Entry of Default under Rule 55, arguing the court should set aside the Default Judgment pursuant to N.C.G.S. § 1-75.11. These matters were heard before Judge Snepp, who entered an Order denying Littlejohn's motions on 13 September 1988.

The record indicates the following facts:

Three judgments were entered against appellant in favor of appellee by the Brevard County, Florida Circuit Court in 1976. The judgments arose surrounding transactions between the parties that occurred in the state of Florida in the early 1970's. Both parties were then residents of Florida. The appellee is still a resident of that state; the appellant now maintains his residence in Holly Hill, South Carolina.

Beginning in 1983, appellant spent considerable time in Charlotte, North Carolina assisting Mellinee J. Mattick in the management of her business and personal affairs. Ms. Mattick was

then president of Mel Jackson Tax Service and owned rental property in Charlotte. Littlejohn prepared tax returns at Ms. Mattick's business and managed her rental property.

After the 1984 tax season, Littlejohn moved into Ms. Mattick's residence on Mt. Holly Road in Charlotte and resided there until her death in 1986. In 1984, Littlejohn received in excess of $20,000 for managing Ms. Mattick's North Carolina property. During this period Littlejohn used a letterhead identifying himself as a financial consultant operating in Charlotte and South Carolina. In 1985, Littlejohn purchased real property in Mecklenburg County, North Carolina.

Ms. Mattick died on 17 June 1986, and left Littlejohn an interest in her estate consisting of both personal and real property located in North Carolina valued in excess of $300,000. Thereafter, Fraser learned that Littlejohn had property in North Carolina and initiated this action to enforce the Florida judgments.

*Weinstein & Sturges, by L. Holmes Eleazer, Jr., Allan W. Singer and Thomas L. Odom, Jr., for plaintiff appellee.*

*Winfred R. Ervin, Jr. for defendant appellant.*

ARNOLD, Judge.

Appellant asks us to find error in the Superior Court's denial of his motion to set aside the default judgment entered against him on the basis that the lower court lacked personal jurisdiction. The contentions in this case revolve around two theories under which jurisdiction might be asserted over the appellant: (1) the Full Faith and Credit Clause of the United States Constitution, by the enforcement of a valid *in personam* judgment of one state in the courts of another; and (2) by jurisdiction *in personam* acquired under N.C.G.S. § 1-75.4(1)(d) and N.C.G.S. § 1-75.8(5) based on appellant's systematic and continuous contacts with North Carolina. We find both theories adequate to provide jurisdiction and affirm the trial court's order.

1. Full Faith and Credit

[1] Two requirements must be met to assert jurisdiction over a defendant based on the full faith and credit theory. First, plaintiff must obtain a judgment in the out-of-state court against defendant, rendering him a "debtor" in the eyes of the North Carolina courts.

Second, the North Carolina courts must examine whether the first state's decree or judgment is entitled to full faith and credit in this state. *See Holt v. Holt*, 41 N.C. App. 344, 255 S.E.2d 407 (1979).

In *Holt* our Court discussed this theory of obtaining personal jurisdiction. We noted that in *Shaffer v. Heitner*, 433 U.S. 186, 210, 97 S.Ct. 2569, 2583, 53 L.Ed. 2d 683, 702 (1977), the United States Supreme Court stated:

> Moreover, we know of nothing to justify the assumption that a debtor can avoid paying his obligations by removing his property to a State in which his creditor cannot obtain personal jurisdiction over him. The Full Faith and Credit Clause, after all, makes the valid in personam judgment of one State enforceable in all other States.

The Supreme Court added in a footnote:

> Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter.

*Shaffer*, 433 U.S. at 210, n. 36, 53 L.Ed. 2d at 702, 97 S.Ct. at 2583.

In *Holt*, this Court ruled the trial court lacked personal jurisdiction over defendant because defendant was only an "obligor," not a debtor, of plaintiff. We stated:

> To proceed under this principle [jurisdiction under the full faith and credit clause], we think it would be essential for plaintiff to first obtain a judgment in the Missouri courts that defendant is in arrears for a sum certain on the ordered payments. From that subsequent judgment, North Carolina courts could then take proper notice that defendant is a "debtor" of plaintiff and the action would lie under this theory.

*Holt*, at 347, 255 S.E.2d at 409.

We believe the facts in the present case come within the scenario outlined in *Shaffer* and *Holt*. Appellee's Judgment of Default here was based on jurisdiction obtained through the three valid money judgments secured against appellant in Florida in 1976. Whether or not North Carolina had jurisdiction to determine the existence

of the debt as an original matter is immaterial. Appellee must only show that he obtained a judgment against appellant in Florida.

Under the second step of this analysis, the Court must determine whether the Florida judgment is entitled to full faith and credit in North Carolina. *See Holt*, at 347, 255 S.E.2d at 409. The rule here requires North Carolina to enforce a judgment rendered in another state if the judgment is valid under the laws of that state. *Florida National Bank v. Satterfield*, 90 N.C. App. 105, 367 S.E.2d 358 (1988); U.S. Const., Art. IV, Section 1.

A collateral attack may be waged against a foreign judgment only on the grounds that it was obtained without jurisdiction; that fraud was involved in the judgment's procurement; or that its enforcement would be against public policy. *Satterfield*, at 107, 367 S.E.2d at 360. None of these grounds was asserted here by Littlejohn against the Florida judgments. Appellant did not object to the trial court's finding of fact that appellee's Florida judgments were valid. Appellant has never contested the Florida court's assertion of subject matter or personal jurisdiction in those actions, nor has he alleged fraud concerning them. Public policy concerns, we believe, *encourage* us to enforce a creditor's claim obtained against a debtor in a sister state. Under this full faith and credit theory for determining personal jurisdiction, we find no error with the lower court's order dismissing appellant's motions.

2. *In Personam* Jurisdiction

[2] We also find the Court had personal jurisdiction over appellant under the second theory asserted. Appellant's continuous and systematic contacts with North Carolina between 1983 and 1988 satisfy the statutory and constitutional requirements necessary to find personal jurisdiction in this case. On the facts before us, this theory adequately permitted the trial court to assert personal jurisdiction over Littlejohn regardless of whether Fraser previously had obtained judgments against appellant in another state.

To determine whether a defendant is subject to *in personam* jurisdiction, two familiar requirements must be met. First, the Court must decide whether a North Carolina jurisdictional statute allows it to entertain the action against defendant. Second, the Court must determine whether the exercise of jurisdiction is consistent with due process. *Marion v. Long*, 72 N.C. App. 585, 325

S.E.2d 300, *appeal dismissed and rev. denied*, 313 N.C. 604, 330 S.E.2d 612 (1985).

Appellee has asserted statutory jurisdiction over Littlejohn under N.C.G.S. § 1-75.4, the North Carolina "long-arm" statute and N.C.G.S. § 1-75.8(5), the *in rem* and *quasi in rem* statute. N.C.G.S. § 1-75.4(1)(d) provides in part that a court has personal jurisdiction in the following circumstance:

(1) Local Presence or Status.—In any action, whether the claim arises within or without this State, in which a claim is asserted against a party who when service of process is made upon such party:

\* \* \* \*

d. Is engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise.

N.C.G.S. § 1-75.8(5) provides that jurisdiction *in rem* or *quasi in rem* may be invoked "[i]n any other action in which in rem or quasi in rem jurisdiction may be constitutionally exercised."

Both of these sections are liberally construed by our courts to find personal jurisdiction over nonresident defendants to the full extent allowed by the due process standards of the Fourteenth Amendment. *Brookshire v. Brookshire*, 89 N.C. App. 48, 365 S.E.2d 307 (1988); *DeArmon v. B. Mears Corp.*, 67 N.C. App. 640, 314 S.E.2d 124 (1984); *Marion*, 72 N.C. App. 585, 325 S.E.2d 300; *Kaplan School Supply Corp. v. Henry Wurst, Inc.*, 56 N.C. App. 567, 289 S.E.2d 607, *rev. denied*, 306 N.C. 385, 294 S.E.2d 209 (1982); *see Cantebury v. Hardwood Imports*, 48 N.C. App. 90, 268 S.E.2d 868 (1980); *Balcon, Inc. v. Sadler*, 36 N.C. App. 322, 244 S.E.2d 164 (1978); *Holt*, 41 N.C. App. 344, 255 S.E.2d 407; *Pope v. Pope*, 38 N.C. App. 328, 248 S.E.2d 260 (1978).

As in the case before us, even if a defendant is not present within the territory of the forum, constitutional due process requirements may still be met if defendant maintained certain "minimum contacts" with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L.Ed. 95, 66 S.Ct. 154 (1945); *Solar Basic Industries v. Electric Membership Corp.*, 70 N.C. App. 737, 321 S.E.2d 28 (1984).

FRASER v. LITTLEJOHN

[96 N.C. App. 377 (1989)]

The minimum contacts test has been extended to actions *in rem* as well as *in personam*. *Shaffer*, 433 U.S. 186, 53 L.Ed. 2d 683, 97 S.Ct. 2569. Also, to be subject to personal jurisdiction, defendant must take some purposeful action within the forum state that invokes for defendant the benefits and protections of the forum state's laws. *Hanson v. Denkla*, 357 U.S. 235, 2 L.Ed. 2d 1283, 78 S.Ct. 1228 (1958), applied in *Chadbourn, Inc. v. Katz*, 285 N.C. 700, 208 S.E.2d 676 (1974). This activity by defendant must be connected to the forum state in such a way that defendant could reasonably anticipate being brought into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 62 L.Ed. 2d 490, 100 S.Ct. 559 (1980); *J. M. Thompson Co. v. Doral Mfg. Co.*, 72 N.C. App. 419, 324 S.E.2d 909, *rev. denied*, 313 N.C. 602, 330 S.E.2d 611 (1985).

Minimum contacts are not determined by applying a mechanical formula; rather, each case is judged on its particular facts considering the traditional notions of fair play and justice. *Ciba-Geigy Corp. v. Barnett*, 76 N.C. App. 605, 334 S.E.2d 91 (1985). The factors to be considered are: (1) the quantity of the contacts, (2) the nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience. *Marion*, at 585, 325 S.E.2d at 302.

When the State exercises personal jurisdiction in a suit arising out of or related to defendant's contacts with the forum, it is said the State is exercising "specific jurisdiction" over the defendant. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, 80 L.Ed. 2d 404, 411 (1984). More importantly for this case, the State also may exercise "general jurisdiction" over defendant; that is, jurisdiction may be asserted even if the cause of action is unrelated to defendant's activities in the forum as long as there are sufficient "continuous and systematic" contacts between defendant and the forum state. *Id.* This distinction is important because in the *Helicopteros* case, the Supreme Court recognized that the threshold for satisfying minimum contacts for general jurisdiction is higher than in specific jurisdiction cases. In order to assert general jurisdiction there must be "substantial" forum-related minimum contacts on the part of the defendant. *See Helicopteros*, 466 U.S. 408, 80 L.Ed. 2d 404.

Applying the above stated principles of law to the facts before us, we conclude that the application of either N.C.G.S. § 1-75.4(1)(d) or N.C.G.S. § 1-75.8(5) to assert jurisdiction over the South Caro-

**FRASER v. LITTLEJOHN**

[96 N.C. App. 377 (1989)]

lina appellant or his North Carolina property does not offend traditional notions of fair play and substantial justice. The trial court found that Littlejohn had the following continuous and systematic contacts with North Carolina: (1) he completed tax returns for customers of Mel Jackson Tax Service at its Charlotte, North Carolina offices for three years; (2) he was the personal, financial, and property manager of Mellinee J. Mattick in Charlotte; (3) he resided in the home of Ms. Mattick in Charlotte on a continual basis from the spring of 1984 until her death in 1986; (4) during 1984, he received in excess of $20,000 for managing Ms. Mattick's North Carolina property; (5) he prepared and used letterhead reading "L. Glenn Littlejohn & Associates, Financial Consultants, 413 N. Tryon Street, Charlotte, North Carolina 28202 (704) 377-5209 and P. O. Drawer 1016, Holly Hills, South Carolina 29069 (803) 496-3531"; (6) he purchased real estate in Mecklenburg County, North Carolina, and the deed, subsequent tax billings, and other correspondence were sent to appellant at Ms. Mattick's residence in Charlotte; and (7) he is beneficiary of both real and personal property, valued in excess of $300,000 of Ms. Mattick's estate in North Carolina. We believe the evidence before us supports these findings of fact.

The nature and extent of Littlejohn's numerous contacts with North Carolina demonstrates an intent to conduct activities that are comparable to the contacts undertaken by normal citizens of this state. Appellant came to North Carolina in 1983 and began working here. He accepted compensation for his work and presumably paid North Carolina state taxes on the income he earned. Appellant purchased property in the state and paid property taxes in Mecklenburg County up through 1988. He conducted himself in Charlotte much as an ordinary citizen of this state, and thus has availed himself of the benefits of this state.

Appellant first contends that his contacts with the State of North Carolina between 1983 and 1986 were not continuous and systematic and did not qualify his actions as minimum contacts. Appellant argues that *Helicopteros*, 466 U.S. 408, 80 L.Ed. 2d 404, supports his position. *Helicopteros* was a wrongful death action brought in Texas against a Colombian corporation and others for an accident that took place in Peru when one of the defendant's helicopters crashed. Four Texas contacts were identified: (1) defendant's chief executive officer flew to Texas for contract negotiations; (2) defendant had purchased approximately eighty percent of its helicopter fleet over a period of years from a Texas-based

company; (3) defendant had sent pilots and management personnel to Texas for training; and (4) the checks paid for defendant's services were drawn on a Texas bank. The Supreme Court ruled that the contacts of the foreign corporation were not substantial enough to support an assertion by the State of personal jurisdiction. *Id.* at 411, 80 L.Ed. 2d at 409. We believe, however, that *Helicopteros* is easily distinguishable from the facts before us.

In *Helicopteros*, Justice Blackmun noted that the Colombian company had never performed helicopter operations in Texas or sold any product that reached Texas and never signed any contract in Texas. Neither had the foreign company ever owned real or personal property or maintained an office or establishment in Texas. *Helicopteros*, 466 U.S. at 411, 80 L.Ed. 2d at 409. Appellant Littlejohn, however, had all of these contacts with North Carolina.

Appellant also argues that while he may have had systematic and continuous contacts with North Carolina between 1983 and 1986, after Ms. Mattick's death his activities in the state essentially stopped, and such prior contacts cannot suffice to constitutionally permit the assertion of *in personam* jurisdiction over him for a cause of action served in 1988. N.C.G.S. § 1-75.4(1) allows jurisdiction against a defendant who is engaged in "substantial activity" within North Carolina *"when service of process is made upon such party"* (emphasis added).

The record before us is not clear concerning Littlejohn's activities in North Carolina from the June 1986 death of Ms. Mattick until this cause of action was commenced in February 1988. The affidavits included, however, indicate that after 1986 and before this action was filed, Littlejohn stopped working at Mel Jackson Tax Service in Charlotte, stopped overseeing Ms. Mattick's rental real estate property in Charlotte, and moved out of Ms. Mattick's residence in Charlotte, resuming his residency in South Carolina. Thus, at the time Fraser commenced his action, appellant's only contacts with North Carolina were his ownership of some real property in Mecklenburg County, North Carolina; his status as a named beneficiary of both real and personal property under Ms. Mattick's will; and his retention of a Charlotte attorney to represent his interest in the Mattick estate.

In *Balcon, Inc.*, 36 N.C. App. 322, 244 S.E.2d 164, this Court upheld a trial court's dismissal of an action brought by a Maryland corporation to recover a money judgment from a defendant, an

individual resident of Maryland whose only contact with North Carolina was his ownership of real property in the state. Plaintiff in *Balcon, Inc.* based its assertion of personal jurisdiction on N.C.G.S. § 1-75.8(4), which allowed jurisdiction when "[d]efendant has property within this State which has been attached or has a debtor within the State who has been garnished." In *Balcon, Inc.*, we held N.C.G.S. § 1-75.8(4) was unconstitutional because it did not meet the due process standards required by the *Shaffer* decision. *Balcon, Inc.*, 36 N.C. App. at 327, 244 S.E.2d at 167. Nevertheless, we also stated that N.C.G.S. § 1-75.8(5), under which Fraser brought this current action against appellant, "support[ed] such jurisdiction over the property within the state of a nonresident if due process standards are met." *Id.* In the case before us, those standards have been met.

The essential ingredient in determining whether minimum contacts exist is that there must be some act by which defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. *Phoenix Am. Corp. v. Brissey*, 46 N.C. App. 527, 265 S.E.2d 476 (1980). Also, whether the type of a defendant's activities conducted within the State are adequate depends upon the facts of the particular case. *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 231 S.E.2d 629 (1977).

We believe appellant's contacts with North Carolina prior to and after 1986 constituted purposeful activities, and are the type whereby he invoked the benefits and protection of North Carolina law. Littlejohn freely chose to come to North Carolina in 1983, work for Ms. Mattick for three years, live in her home, and purchase property here. After 1986, he reaped benefits that grew directly from those earlier contacts — primarily an interest in Ms. Mattick's estate. To defend that interest in North Carolina, Littlejohn hired an attorney.

Standing separately, appellant's activities in North Carolina after 1986 may not have been adequate to allow Fraser to establish personal jurisdiction over him for this action. It is clear that mere ownership of property in the forum state is insufficient to establish "minimum contacts" necessary to satisfy the requirement of due process. *Georgia R.R. Bank & Trust Co. v. Eways*, 46 N.C. App. 466, 265 S.E.2d 637 (1980). Similarly, we do not believe an out-of-state legatee's or devisee's interest in an in-state resident's estate,

FRASER v. LITTLEJOHN

[96 N.C. App. 377 (1989)]

standing alone, is adequate to establish personal jurisdiction involving a matter totally unrelated to the estate interest. We must point out, however, that under N.C.G.S. § 31B-2(a), Littlejohn had the right to renounce his interest in Ms. Mattick's will. Had he chosen this option, establishing the requisite minimum contacts necessary to establish jurisdiction in this case would have been much more difficult.

Nevertheless, it is unnecessary to determine if appellant's post-1986 contacts individually are sufficient to support jurisdiction, or, if those contacts had been unrelated to the pre-1986 events, whether they suffice to support jurisdiction. We are required by the case law to consider the cumulative impact of all of defendant's contacts with the forum, not each contact separately. Littlejohn had three significant contacts with North Carolina when this suit was commenced, not one, as did the defendant in *Balcon*.

Similarly, we must consider the nature of the contacts, and in so doing, we find it impossible to view appellant's 1988 contacts as unrelated to his 1983 through 1986 activities in North Carolina. As we noted above, Littlejohn's activities in North Carolina prior to Ms. Mattick's death undoubtedly constituted contacts sufficient with North Carolina to constitutionally establish personal jurisdiction during that period. It is impossible to examine the 1988 contacts appellant had with this forum without recognizing the direct relationship between those contacts and the contacts defendant had with North Carolina prior to 1986. Viewed together over the period 1983 to 1988, we find the quantity and nature of contacts appellant had with North Carolina warrant the assertion of personal jurisdiction over him here.

We should also examine the "fairness" factors relevant in assessing jurisdiction: the convenience of the forum for the parties, the possibility of an alternative forum, and the "regulatory" interest of the forum state. *See International Shoe*, 326 U.S. 310, 90 L.Ed. 95, 66 S.Ct. 154; *Marion*, 72 N.C. App. 585, 325 S.E.2d 300.

While it may be inconvenient, it is not unduly burdensome to force appellant to defend this suit away from his home in South Carolina. North Carolina certainly is the most convenient forum as far as the location of witnesses and material evidence are concerned. Similarly, at this time North Carolina is the only possible forum for appellee to collect on the debts owed him. Appellant has no assets of value in South Carolina nor in any other state.

FRASER v. LITTLEJOHN

[96 N.C. App. 388 (1989)]

Finally, as we mentioned in our analysis under the full faith and credit clause, North Carolina has an interest in assisting out-of-state creditors who seek to collect from debtors who come within the reach of our courts. No state benefits when debtors are allowed to escape their financial obligations, and we refuse to assist appellant in his attempt at that effort here.

We have examined appellant's other assignments of error and found them to be without merit.

For the foregoing reasons, the trial court's order is

Affirmed.

Chief Judge HEDRICK and Judge BECTON concur.