EDUCATIONAL STUDIOS, INCORPORATED, complainant-respondent, and CONSOLIDATED FILM INDUSTRIES, INCORPORATED, et al., defendants-respondents,

*v.*

JAMES CRUZE PRODUCTIONS, INCORPORATED, LIMITED, and ELLA MARIE MORTIMER, defendants-appellants.

[Argued October 30th, 1932. Decided January 23d, 1933.]

*Messrs. Perkins, Drewen & Nugent,* for the defendant-appellant James Cruze Productions, Incorporated, Limited.

*Mr. Harry Steiner* and *Mr. Merritt Lane,* for the defendant-appellant Ella Marie Mortimer.

*Messrs. Morrison, Lloyd & Morrison (Mr. William J. Morrison, Jr.,* of counsel), for the complainant-respondent Educational Studios, Incorporated.

*Messrs. Wall, Haight, Carey & Hartpence (Mr. Thomas G. Haight,* of counsel), for the defendant-respondent Consolidated Film Industries, Incorporated.

The opinion of the court was delivered by

TRENCHARD, J.

These are appeals from an order permitting the complainant-respondent to perform, in the place of the other parties who have failed to do so, a contract for making and distributing a motion picture, and directing the proceeds to be held until after final hearing, for distribution among the parties.

Of course our review is limited to a consideration of the proof which the vice-chancellor had before him when the order in question was made. We are not concerned with what may possibly be the situation upon final hearing. At the time when the order was made it was reasonably clear that the situation presented by the pleadings and affidavits was substantially as follows:

Defendant-appellant James Cruze Productions, Incorporated, Limited, a California corporation (hereinafter called Cruze), contracted to produce a "talkie" called "Race Track." It completed the "negative" and "sound track" and, pursuant to the contract as modified by its consent, caused these to be deposited in a studio in Fort Lee in this state. Complainant-respondent Educational Studios, Incorporated, a corporation of New York (hereinafter called Educational), contracted to permit Cruze to use Educational's "studio" in California for making the picture, and also to advance to Cruze a large part of the cost of making the picture; and by the contract was given, among other things, a first lien on the picture and on the moneys to be earned by exhibiting it, the lien for cash advanced being said to amount to $98,000. Defendant-appellant Ella Marie Mortimer, a resident of New Jersey, is the assignee of one Meyer, a non-resident, who loaned Cruze other moneys for the making of the picture, and was given an assignment of Cruze's interest, which was subject to Educational's lien. She issued an attachment at or about the time the bill of complaint was filed and has a levy on the right, title and interest of Cruze in the negative and sound track. Defendant-respondent Consolidated Film Industries, Incorporated, a corporation of Delaware, registered and doing busi-

ness in New Jersey (hereinafter called Consolidated), owns and operates the studio in Fort Lee in which the negative and sound track were and are deposited, and contracted to print from the negative and sound track the "positives" from which the picture is shown in the theatres. Defendant-respondent Tiffany Productions, Incorporated, a corporation of New York (hereinafter called Tiffany), contracted to "distribute" the picture to theatres in the United States and Canada. Defendant-respondent First Division Pictures, Incorporated, a corporation of New York (hereinafter called First Division), contracted to "distribute" the picture to theatres in other countries. By the contract, Tiffany and First Division were to distribute the picture to the theatres, to collect the rentals from the theatres, and, after deducting certain charges and compensation for distribution, to pay the moneys produced by the picture to Cruze or to those to whom Cruze had given liens or assigned these moneys. Neither Tiffany nor First Division performed, and Cruze elected to perform in their place. Thereafter Cruze's right so to perform was assigned to Educational. The negative and sound track have little, if any, money value in the present condition, and can only be made productive by the distribution and showing of the picture in the theatres. The money value of its production will be impaired unless it be distributed and sold without delay. Educational filed its bill January 14th, 1932, and obtained an order to show cause why it should not be permitted to distribute the picture as Tiffany and First Division should have done, had they performed their obligations under the contract. Process and the order to show cause were served on the resident defendants, and notice in lieu of process, and the order to show cause, were served on the non-resident defendants. Cruze and First Division, by leave of court, entered a special appearance raising the jurisdictional question presently to be considered.

After hearing, Vice-Chancellor Lewis advised an order permitting the complainant-respondent Educational to distribute the picture in accordance with the contract and directing that the proceeds be held subject to the further order of the court.

Educational, as required by the order, gave a bond for $200,000.

Defendants Cruze and Mortimer alone have appealed from this order. Both state the same grounds of appeal.

The appellants contend that the court had no jurisdiction to deal with this chattel as against non-residents.

But we think it had. The court of chancery has jurisdiction to settle as between parties, some of whom are non-residents, their conflicting equitable liens upon a chattel physically in the state and in the possession of a resident party, and upon the moneys to be realized by marketing the chattel.

The "negative" and "sound track" have their *situs* in New Jersey. They are physically in this state, being stored in Consolidated's laboratory in Fort Lee, owned and operated by Consolidated (a corporation registered and doing business in New Jersey), and were placed there November 3d, 1931, pursuant to the contract between the parties as modified by mutual consent, as we believe the evidence showed, even after studying appellants' argument to the contrary.

The title to tangible personal property is ordinarily governed by the law of its *situs*. *Schmidt* v. *Perkins, 74 N. J. Law 785.*

In *Amparo Mining Co.* v. *Fidelity Trust Co., 74 N. J. Eq. 197*, Vice-Chancellor Stevenson said:

"The origin of the jurisdiction of our courts in actions *quasi in rem* is to be found in the power of the sovereign state to exercise control over all objects to which that power can be directly applied. The state must control all property within its territorial limits. Parties interested in that property and residing within the state, or voluntarily coming into the state in order to have their rights in respect of the property in question enforced or protected, have a right to be heard in the courts of the state, and the utmost that can be demanded on the part of non-resident defendants is that they shall be fairly notified of the action so as to have ample opportunity to appear and be heard therein. When these conditions exist the rights of all parties interested in the *res* are determined by *due* process of law."

That case was affirmed in this court (*75 N. J. Eq. 555*), on the theory that it was an action *quasi in rem*, after finding that the *situs* of the *res* was in the state and that no personal act on the part of the defendant was necessary to grant the relief sought by the bill.

So, in the present case, Cruze, the only non-resident appealing, was fairly notified and had ample opportunity to be heard, and the *res* is in this state and no personal act on the part of the non-resident party is necessary to grant the relief sought by the bill.

Mr. Justice Dixon, speaking for this court in *Wilson* v. *American Palace Car Co., 65 N. J. Eq. 730,* said:

"No doubt, when the object of a suit is to enforce a specific lien upon property of the defendant within the state, or when the court obtains control over such property * * * a state court may be authorized, after reasonable effort to notify the absent defendant, to enforce the claim of the plaintiff respecting such property * * *. In such cases the court acquires a jurisdiction *quasi in rem* sufficient to support the limited judgment."

Of course any question affecting the status of the specific property within the jurisdiction of the court and the rights of the parties in the property may be tried. *Cameron* v. *Penn Mutual Life Insurance Co., 111 N. J. Eq. 24.*

It is, therefore, quite apparent that, in this suit *quasi in rem,* the court of chancery has jurisdiction to deal with these chattels and to adjudicate the rights of the parties in the picture and in the moneys to be realized from it.

The appellants further contend that the court had no power to conserve this picture, or its value, by transmuting it into money before the final hearing.

We think that it had. Where the court of chancery has jurisdiction, and there are conflicting equitable liens upon a chattel, and the chattel is in an incomplete and unmarketable condition, the court may, upon proper terms, permit it to be completed and sold, and the proceeds to be held in its place pending a final hearing, in order to avoid the risk of a poorer market then.

The position of the complainant Educational is in essence that of a mortgagee. It has loaned its money, has as security a lien on the picture and the moneys to be realized by exhibiting it, and this lien is to be discharged upon re-payment of the money loaned. These are the elements necessary to constitute a mortgage. In *Hastings* v. *Fithian, 71 N. J. Law 311,* it was said:

"The transaction therefore presented all the elements that have ever been deemed necessary to constitute a mortgage—an indebtedness, a transfer of property by the debtor to the creditor to ensure the payment of the debt and a right in the debtor to have all that remains after the debt is paid."

The Chancery act (*1 Comp. Stat. p. 433*), section 62, provides: "The court shall have power in any suit for the foreclosure or satisfaction of any mortgage covering real or personal property, or both, upon the petition of any party to such suit, where the property mortgaged is of such character or so situated as to make it liable to deteriorate in value pending said suit, or to make its care or preservation difficult or expensive, to order a sale to be made thereof at public or private sale, * * * as the said court may direct, and the proceeds of any such sale to be brought into court, there to remain subject to the same liens and equities of all parties in interest as was the mortgaged property, and to be disposed of as the said court by its decree or order shall direct."

It seems clear, therefore, that the court in this case—a suit for the satisfaction of an equitable lien or mortgage covering personal property, which is of such character as to make it liable to deteriorate in value pending the suit—has power to order what is, in effect, the sale of the picture at private sale, by permitting the complainant-respondent to distribute and exhibit the picture, and has power to direct the proceeds to be brought into court for final disposition.

But the appellants argue that the proof did not show that the property is liable to deteriorate in value pending the suit. We think it did. The contract for the distribution of the picture provided in effect that for the best interest of all it should be distributed quickly. The affidavits presented by the

complainant were to the effect that the picture was of a perishable nature in that the public demand for that type was decreasing. While an affidavit by the president of the appellant Cruze, seems to be to the contrary, the vice-chancellor had before him that officer's telegram of December 21st, 1931, to Tiffany, after the latter's default, that "in order to mitigate damages sustained and that will be sustained" it is necessary "to release and distribute said motion picture photoplay through another distributing corporation." That telegram, in our view, nullified his affidavit, and therefore the conclusion was justified that it was necessary to distribute this picture promptly in order to mitigate and avoid damage to all of the parties. And so the court had discretionary power to make the order, and certainly in this case there was no abuse of discretion. *Jersey Land Co.* v. *Goldblatt, 104 N. J. Eq. 425.*

The appellants say that, if the order under review be carried into effect, it will be impossible, if this court should determine upon final hearing that relief should not have been granted, to put the parties in *status quo.* But it is a sufficient answer to that argument to point out that the duty of the court on seasonable application, in such a case as this, is to preserve the subject-matter of the litigation in such condition as will enable the appellate court to render an efficacious decree in the premises. *Pennsylvania Railroad Co.* v. *National Docks, &c., Railway Co., 54 N. J. Eq. 647; Helbig* v. *Phillips, 109 N. J. Eq. 546.* To reverse the order from which this appeal is taken, would be to destroy the only hope that Educational has, and also the only hope Cruze and Mortimer have, that any of them can be repaid the moneys expended in making this picture.

But the appellants also say that if the relief granted by the order is carried into effect, the rights of Mortimer and Cruze would be destroyed.

We think not. When the contracts between these parties were made, the distribution and exhibition of the picture promptly upon the completion of its production, was deemed imperative. Only by distributing and exhibiting the picture

can the money be obtained to pay Educational the money advanced by it to make the negative. Only by distribution can the money be obtained to pay Mortimer the money advanced by Meyer (her assignor) to make the negative. Only by distribution can there be any profit for Cruze after Educational and Mortimer are paid.

Educational is the only party that has offered to distribute and exhibit the picture and to account in court for the moneys realized thereby, and it has given a $200,000 bond for the faithful performance of the order permitting it to do so. There is nothing in the case to justify the contention that such bond is inadequate. Moreover, the order provides: "And further ordered that any of the parties hereto may apply to the court for further directions in respect to the finishing, distribution and exhibition of said motion picture at any time upon ten days' notice to the other parties hereto," thus giving the other parties full opportunity to object at any time to anything Educational may do in distributing and exhibiting the picture and to control Educational by further orders and directions of the court.

Appellants contend that Educational should be required to pay, or to obligate itself to pay to them the cost of production of the picture before being allowed to distribute it. But we are not impressed with that argument. We think the contention is unsound, first, because Educational is to distribute the picture under the conrol of the court in order to protect all the parties against the loss of its value by delay in distribution, and so that the final decree may be efficacious to protect the rights of the successful litigants; and, secondly, because Educational's right to be permitted to distribute, under the order appealed from, is based upon Cruze's right, upon Tiffany's and First Divison's default, to distribute in their stead so as to mitigate damages (which Cruze elected to do but did not attempt to do), and Cruze's right as provided in the contract, to "recoup the moneys due it * * * all damages it has sustained," all of which rights Cruze assigned to Educational.

It may be observed at this point that the present case, in

many of its phases, is almost exactly like the case of *Chesapeake and Ohio Railroad* v. *Swayze, 60 N. J. Eq. 417,* and which, in principle, disposes of many of the objections urged in the case at bar.

But the appellants further say that necessary parties were not made parties to the bill. This contention seems to relate to Meyer and one Hovell. We believe that they were not necessary parties. It is reasonably clear (although appellants contend to the contrary) that Mortimer now owns, as assignee, all of Meyer's rights, so he is not a necessary party in this suit. Hovell is Cruze's New York attorney and represented the interests of Cruze, and we believe that no personal interest of his is disclosed anywhere in the proofs.

Numerous suggestions for reversal are founded upon the erroneous proposition that the order appealed from is a final adjudication, and grants to the complainant the full measure of relief prayed for in the bill of complaint.

But a glance at the prayer of the bill shows that this is not so, and that the relief which this order grants is merely incidental to the main relief sought. The order permits the moneys realized to be disposed of in accordance with the rights of the parties as the court may determine upon a final hearing.

It is further suggested that, since "the matters involved in the litigation" in the court of chancery are "already in litigation in the State of California, our court is deprived of jurisdiction."

Not so. That would be so only if there was a judgment in the California suit which was *res adjudicata* in the present suit, *i. e.,* an identity of the thing sued for, of the cause of action, of the persons and parties, of the quality of the persons for and against whom the claim is made (*Smith* v. *Fischer Baking Co., 105 N. J. Law 567*), and certainly there is no proof made of any such judgment in the present case.

It is also said that the complainant did not come into court with clean hands, and, therefore, the order in question should be reversed.

We believe that this contention is ill-founded in point of fact.

As to the argument that the negative is in New Jersey by some act of Educational in violation of the agreement, it is without substance, as we have already indicated. As to the argument that Educational controlled Tiffany and caused it to default, that is in our opinion likewise without substance as is shown by an examination of the pleadings and affidavits.

We believe that the foregoing observations in effect dispose of every question argued requiring comment.

The order under review will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, HEHER, KAYS, HETFIELD, WELLS, KERNEY, JJ. 13.

*For reversal*—None.