EVERETTE CANTERBURY, t/a EVERETTE CANTERBURY LUMBER COMPANY v. MONROE LANGE HARDWOOD IMPORTS DIVISION OF MACROSE INDUSTRIES CORPORATION

No. 795SC986

(Filed 5 August 1980)

**Process § 14; Rules of Civil Procedure § 4– foreign corporation – service of process on Secretary of State ineffective**

Where defendant, a N.Y. corporation, allegedly purchased lumber from plaintiff, a citizen of West Virginia, instructed plaintiff to ship the lumber to an N.C. business for treatment, processing, and storage, and then failed to pay for the lumber, plaintiff's action to recover the amount due was properly dismissed for insufficiency of service of process where service was had upon defendant by delivering copies of the summons and complaint, along with an order of attachment, to the office of the Secretary of State of N.C. which, in turn, mailed the documents to defendant in N.Y., since defendant had not appointed a process agent in this State; defendant did not transact business in N.C. so that service on the Secretary of State would be effectual under G.S. 55-143, the isolated incident involving one shipment of lumber not being sufficient to support such service; and there was no evidence that the contract between this plaintiff and this defendant was to be performed in whole or in part in N.C. so as to invoke the provisions of G.S. 55-145(a)(1), though a contract between defendant and a processor of lumber was to be performed here, since the cause of action did not arise out of that arrangement but out of the sales contract between plaintiff and defendant. Such service was not proper even though defendant admittedly had actual notice and even though minimum contacts existed between defendant and N.C. to permit the State constitutionally to exercise jurisdiction had service been effective.

APPEAL by plaintiff from *Bruce, Judge.* Order entered 9 August 1979 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals on 16 April 1980.

Plaintiff in this action is a citizen of West Virginia, and defendant is a New York corporation. The action had its inception in the State of North Carolina on 26 March 1979, at which time plaintiff sought and obtained an order of attachment on a quantity of lumber owned by defendant and stored at Maritime Lumber Services in Wilmington, New Hanover County, North Carolina. As grounds to support the attachment, plaintiff filed an affidavit averring that defendant, with the intent to defraud its creditors, "[h]as removed, or is about to remove, [the lumber] from this State, ... and it is believed ... that defendant will soon ship it to points unknown." Pursuant to G.S. § 1-440.10, plaintiff filed a bond in the amount of $200.

Thereafter, on 13 April 1979, plaintiff filed a complaint wherein he alleged that he had sold the lumber in question to the defendant in September and October 1978, and that, "[p]ursuant to defendant's instructions," he had shipped the lumber to Maritime Lumber Services in Wilmington "for storage and treatment." The parties' contract provided that the lumber be paid for in full within 30 days after invoice, but plaintiff alleged that defendant had "defaulted" in paying and remained indebted to him in the amount of $14,694.

Service was had upon defendant by delivering copies of the summons and complaint, along with the order of attachment, to the Office of the Secretary of State of North Carolina. That office mailed the documents to the defendant in New York.

On 11 May 1979 defendant filed an answer wherein it moved to dismiss the complaint for lack of personal jurisdiction and insufficiency of service of process. Defendant further generally denied the allegations of the complaint, but admitted that it entered into "certain contracts" with plaintiff to buy "certain quantities" of lumber, and that the lumber was to be sent to Maritime Lumber Services in Wilmington "for storage, treatment and reshipment." However, defendant contended that plaintiff had "delivered a smaller quantity of lumber than was contracted for" which prevented defendant from filling an order to its customer. Defendant asserted a counterclaim for damages in the amount of $3,000 for loss of profits on the order to its customer. Plaintiff replied on 17 May 1979 and in essence denied the averments of the counterclaim.

On 14 June 1979 defendant moved to discharge the order of attachment against its property. In support of its motion, it offered affidavits that the value of the attached lumber was $15,800 and filed a bond in the amount of $29,400, in accord with G.S. § 1-440.39. The motion was allowed and an order was entered discharging the attachment. On 3 July 1979 the court, upon motion of the defendant, ordered that the plaintiff increase the amount of his bond to the sum of $8,000, pursuant to G.S. § 1-440.40(a).

Defendant then moved to dismiss the complaint "for lack of personal jurisdiction pursuant to Rule (12)(b)(2). ..." On 9 August 1979 Judge Bruce entered an Order dismissing plaintiff's complaint "for insufficiency of service of process, pursuant to NCGS § 1A-1, Rule 12(b)(5)."

Plaintiff appealed.

*Franklin E. Martin for the plaintiff appellant.*

*Franklin L. Block for the defendant appellee.*

HEDRICK, Judge.

The question on which resolution of this appeal turns is whether substituted service of process on the Secretary of State was proper. For the reasons to follow, we are constrained to hold that it was not, even though the defendant admittedly had actual notice and even though we are satisfied that minimum contacts exist between this defendant and the State of North Carolina to permit this State constitutionally to exercise jurisdiction had service been effective.

Before we reach the ultimate issue respecting service and although we bottom our affirmation of the order dismissing plaintiff's action on the insufficiency of service, we deem it desirable to make the following observations concerning certain intricately related jurisdictional features of this case.

First, since the parties have raised no question regarding the propriety of the proceeding in attachment against the de-

fendant's property, we do not consider whether the statutory requirements of G.S. § 1-440.1 *et seq.* were met. But, assuming the attachment proceeding was in order so as to give the courts of this State subject matter jurisdiction, the "long-arm" statute, G.S. § 1-75.8, furnishes statutory grounds for the exercise of jurisdiction. In pertinent part, section 1-75.8 provides as follows:

> *Jurisdiction in rem or quasi in rem — grounds for generally.* — A court of this State having jurisdiction of the subject matter may exercise jurisdiction in rem or quasi in rem ... in any of the following cases:
>
> . . .
>
> (5) In any ... action in which in rem or quasi in rem jurisdiction may be constitutionally exercised.

Our courts have interpreted subsection (5) to mean that the ability to attach a nonresident defendant's property is not a sufficient predicate, standing alone, for the assertion of *quasi in rem* jurisdiction. In accord with the decision of the United States Supreme Court in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed. 2d 683 (1977), we have held that the mandates of the due process fairness standard apply with equal force to actions *in rem* and *quasi in rem* as to actions *in personam. Balcon, inc. v. Sadler*, 36 N.C. App. 322, 244 S.E. 2d 164 (1978). Therefore, even though the statute here provides a ground for exercising *quasi in rem* jurisdiction, the final determinative factor is whether the nonresident defendant has certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). *See Rush v. Savchuk,* — U.S. — , 100 S.Ct. 571, 62 L.Ed. 2d 516 (1980).

In the present case, we find the combination of the following factors sufficient to establish the requisite connection between the defendant and the forum: (1) The presence of the property in this State, especially in light of (2) the relationship

between the property and the cause of action. As the *Shaffer* Court pointed out, the mere presence of property in the forum may "suggest the existence of other ties among the defendant, the State, and the litigation, . . . " *Shaffer v. Heitner, supra* at 209, 97 S.Ct. at 2582, 53 L.Ed. 2d at 701. *See also Gro-Mar Public Relations, Inc. v. Billy Jack Enterprises, Inc.,* 36 N.C. App. 673, 245 S.E. 2d 782 (1978). A significant tie develops when the property is *related* to the underlying controversy. In such a case, "it would be unusual for the State where the property is located not to have jurisdiction. . . . [T]he defendant's claim to property located in the State would normally indicate that he expected to benefit from the State's protection of his interest." *Shaffer v. Heitner, supra* at 208-09, 97 S.Ct. at 2581, 53 L.Ed. 2d at 700. We think it indisputable that the property in the present case is related to and, indeed, is the source of the controversy between the plaintiff and the defendant.

A third factor which influences our opinion that the requirements of the minimum contacts test have been met in this case is the defendant's instruction to the plaintiff to ship the lumber to Maritime Lumber Services in Wilmington, North Carolina. In other words, the property did not fortuitously come to rest in North Carolina. "Whether judicial jurisdiction may be exercised over the owner . . . may depend upon whether he has directed, or consented, that the chattel should be taken into the state or at least had reason to foresee that it would be taken there." Restatement (Second) of Conflict of Laws, § 38, Comment c at 165, and § 51, Comment a (1971). *See Educational Studios, Inc. v. James Cruze Productions, Inc.,* 112 N.J. Eq. 352, 164 A. 24 (1933); Zammit, *Quasi-in-Rem Jurisdiction: Outmoded and Unconstitutional?,* 49 St. John's L. Rev. 668 (1975). Moreover, not only did the defendant direct that the lumber be shipped to this State, he thereafter engaged the services of a North Carolina business enterprise for the treatment, processing and storage of his lumber. The logical assumption follows that the defendant and Maritime Lumber Services had a contract respecting the treatment of the lumber. In our opinion, the defendant thereby "engaged in . . . purposeful activity related to the forum that would make the exercise of jurisdiction fair, just [and] reasonable. . . ." *Rush v. Savchuk, supra* at _____, 100 S.Ct. at 573, 62 L.Ed. 2d at 525.

Finally, the nature of the property, *i.e.*, its tangible character, contributes to our conclusion that the State of North Carolina constitutionally could exercise *quasi in rem* jurisdiction in this case. *See* von Mehren and Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L. Rev. 1121 (1966).

We turn now to resolution of the ultimate issue since, despite the fact that constitutional and statutory grounds for the exercise of jurisdiction exist, nevertheless service of process obviously must be effective before our courts can proceed to entertain the suit. In this regard the following statutes are applicable to the issue before us:

> § 1-75.9. *Jurisdiction in rem or quasi in rem — manner of exercising.* — A court of this State exercising jurisdiction in rem or quasi in rem pursuant to § 1-75.8 [*supra*] may affect the interests of a defendant in such an action only if process has been served upon the defendant in accordance with the provisions of Rule 4(k) of the Rules of Civil Procedure, . . .

The applicable provisions of G.S. § 1A-1, Rule 4(k) direct that where, as here, the defendant is known, then he "may be served in the appropriate manner prescribed for service of process in section (j)." The pertinent provision of section (j) is found in subsection (6)b (1979 Cum. Supp.) and prescribes the following procedure for serving a foreign corporation:

> By delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to be served or to accept service . . . [of] process or by serving process upon such agent or the party in a manner specified by any statute.

According to the record before us, defendant had not appointed a process agent in this State. Plaintiff proceeded to attempt service through the Secretary of State, apparently on the authority of either G.S. § 55-144 or § 55-145, since there is likewise no evidence of record that the defendant was authorized to transact business in North Carolina so that service on the Secretary of State would be effectual under G.S. § 55-143.

On appeal, plaintiff argues first that defendant was served properly in accordance with the provisions of G.S. § 55-144 which provide:

> Whenever a foreign corporation shall transact business in this State without first procuring a certificate of authority so to do from the Secretary of State or after its certificate of authority shall have been withdrawn, suspended, or revoked, then the Secretary of State shall be an agent of such corporaticn upon whom any process, notice, or demand in any suit upon a cause of action arising out of such business may be served.

What it means to "transact business" is addressed by statute as well as numerous decided cases in this jurisdiction. According to G.S. § 55-131(b),

> [A] foreign corporation shall not be considered to be transacting business in this State, . . . by reason of carrying on in this State any one or more of the following activities:

> . . .

> (9) Conducting an isolated transaction completed within a period of six months and not in the course of repeated transactions of like nature.

Our Supreme Court has interpreted "shall transact business in this State" to require the engaging in, carrying on or exercising, in North Carolina, some of the functions for which the corporation was created. *Abney Mills v. Tri-State Motor Transit Co.*, 265 N.C. 61, 143 S.E. 2d 235 (1965). It has further been held that the business done by the corporation in this State must be of such nature and character "as to warrant the inference that the corporation has subjected itself to the local jurisdiction and is, by its duly authorized officers and agents, present within the State." *Spartan Equipment Co. v. Air Placement Equipment Co.*, 263 N.C. 549, 556, 140 S.E. 2d 3, 9 (1965). In short, the activities carried on by the corporation in North Carolina must be substantial, continuous, systematic and regular. *Abney Mills v. Tri-State Motor Transit Co., supra. See also Marshall Exports,*

*Inc. v. Phillips,* 385 F. Supp. 1250 (E.D.N.C. 1974), *aff'd* 507 F. 2d 47 (4th Cir. 1974). An isolated instance of business activity or casual acts are not sufficient to support service on the Secretary of State pursuant to G.S. § 55-144. *Id.; see also Harrington v. Croft Steel Products, Inc.,* 244 N.C. 675, 94 S.E. 2d 803 (1956).

The record before us contains evidence of only a single instance of business conducted by this defendant in this State. As far as we can determine, the defendant has never been present in North Carolina at any time or for any purpose other than to have this one shipment of lumber treated and processed at Maritime Services. On the foregoing authorities, we hold that the defendant has not transacted business in North Carolina within the meaning of G.S. § 55-144 or to the extent that service on the Secretary of State pursuant to the statute was effective.

Plaintiff alternatively argues that defendant was served properly in accordance with the following provision of G.S. § 55-145:

(a) Every foreign corporation shall be subject to suit in this State, whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:

(1) Out of any contract made in this State or to be performed in this State; . . .

This section has been interpreted to require that the lawsuit be based on a contract that has substantial connection with the forum state. *Byham v. National Cibo House Corp.,* 265 N.C. 50, 143 S.E. 2d 225 (1965).

The only fact in the instant case which would support applicability of this section of the statute is the shipment of the lumber to North Carolina. On the basis of the scant evidence before us, however, we cannot say with any degree of certainty that the contract between *this* plaintiff and *this* defendant was to be performed in whole or in part in this State. Obviously, the

contract between the defendant and Maritime Lumber Services was to be performed here. It is primarily that contract or business relationship which formed the basis for our conclusion that minimum contacts are present between the defendant and this State. But, the cause of action did not arise out of that arrangement. It arose exclusively out of the contract of sale, no part of which, as far as we can tell, was performed in North Carolina. Shipment of the lumber to Wilmington was merely incidental to the contract of sale. The statute, however, requires that the cause of action arise out of the contract on which the suit is based. In our opinion, the contract between plaintiff and defendant was performed outside North Carolina and thus the provision of G.S. § 55-145(a)(1) cannot be invoked to support service of process on the Secretary of State.

We find the decision in *Bowman v. Curt G. Joa, Inc.*, 361 F. 2d 706 (4th Cir. 1966) apposite. That case involved a sales contract for a machine with delivery f.o.b. the seller's plant in Wisconsin. The buyers accepted delivery of the machine at the seller's plant and paid all shipping costs to their North Carolina business site. The seller provided one technician for one day at the buyer's plant to help the buyers install the machine, and he was to return to supervise the initial production run. The Court held that substantial performance of the contract occurred at the seller's plant in Wisconsin and thus G.S. § 55-145(a)(1) did not apply. *See also Golden Belt Mfg. Co. v. Janler Plastic Mold Corp.*, 281 F.Supp. 368 (M.D.N.C. 1967), *aff'd*, 391 F. 2d 266 (4th Cir. 1968) (per curiam).

Circumstances were not present in this case to permit plaintiff to bring this defendant into court by substituted service on the Secretary of State. Barring the ability to personally serve the defendant, plaintiff's proper recourse was substituted service by way of registered or certified mail pursuant to G.S. § 1A-1, Rule 4(j)(9)(b). *Lewis Clarke Associates v. Tobler*, 32 N.C. App. 435, 232 S.E. 2d 458, *cert. denied*, 292 N.C. 641, 235 S.E. 2d 60 (1977). *See generally*, Louis, *Modern Statutory Approaches to Service of Process Outside the State — Comparing the North Carolina Rules of Civil Procedure with the Uniform Interstate and International Procedure Act*, 49 N.C.L.Rev. 235 (1971). We thus affirm the order of Judge Bruce dismissing the plaintiff's action.

Affirmed.

Judges ARNOLD and ERWIN concur.