THERESA K. POPE v. GEORGE NICK POPE

No. 7714DC863

(Filed 17 October 1978)

1. **Process § 9.1— arrearages under separation agreement—nonresident defend-ant—in personam jurisdiction**

    Defendant's contention that G.S. 1-75.4(5)(c) would not give the district court *in personam* jurisdiction over a nonresident defendant in an action for arrearages due under a separation agreement is without merit.

2. **Process § 9.1— jurisdiction over nonresident defendant—money as a thing of value**

    Money payments are a "thing of value" within the meaning of G.S. 1-75.4(5)(c).

3. **Husband and Wife § 13— arrearages under separation agreement—proper forum for action**

    The proper forum for an action for arrearages due under a separation agreement is the state in which the separation agreement was entered into when one of the parties to the separation agreement is still a resident of that state.

APPEAL by defendant from *Moore, Judge.* Order entered 22 August 1977 in District Court, DURHAM County. Heard in the Court of Appeals 16 August 1978.

The parties entered into a separation agreement in North Carolina on 3 November 1967 while both parties were citizens and residents of this State. The agreement provided, among other things, that the defendant would pay $350.00 per month to the plaintiff for support. The parties were divorced on 31 July 1969 in North Carolina. Some time after the separation agreement was entered into, defendant moved to Florida and has continued to reside there since that date.

Defendant made payments as provided by the separation agreement until May 1976, but has made no payments since. On 16 September 1976, plaintiff brought suit in the District Court of Durham County for arrearages.

Plaintiff asserted that the court had *in personam* jurisdiction over the defendant pursuant to G.S. 1-75.4(5)(c) because the separation agreement was a local contract and the support payments a "thing of value" which were sent into this State. Plaintiff served the defendant in Florida pursuant to Rule 4(j)(9)

---

---

of the North Carolina Rules of Civil Procedure. On 16 September 1976, copies of the summons and complaint were deposited at the post office for mailing by certified mail, return receipt requested, addressed to defendant. The return receipt shows that defendant received the summons and complaint on 27 September 1976.

The defendant failed to answer or defend and so on 12 November 1976, the Clerk of Superior Court of Durham County entered default and judgment by default for plaintiff.

On 29 July 1977, defendant moved to set aside the entry of default and the default judgment claiming that the court lacked personal jurisdiction over the defendant. On 22 August 1977, Judge Moore denied defendant's motion.

*Spears, Barnes & Baker by Robert F. Baker for defendant appellant.*

*Bryant, Bryant, Drew and Crill by Victor S. Bryant, Jr., for plaintiff appellee.*

CLARK, Judge.

[1]  The sole question presented on appeal is whether or not G.S. 1-75.4(5)(c) grants *in personam* jurisdiction over a non-resident defendant in an action for arrearages due under a separation agreement. The defendant contends that the statute only applies to commercial contracts and that money is not a "thing of value" within the meaning of G.S. 1-75.4(5)(c). Therefore, defendant argues, the district court had no statutory basis for asserting *in personam* jurisdiction over the defendant and the default judgment should be set aside.

G.S. 1-75.4 provides:

"A court of this State . . . has jurisdiction over a person . . . under any of the following circumstances:

. . . .

(5) Local . . . Contracts.—In any action which:

. . . .

c. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to deliver or receive

within this State, or to ship from this State goods, documents of title, or other things of value; . . ."

A separation agreement is enforceable at law as is any other contract. *Shaffner v. Shaffner,* 36 N.C. App. 586, 244 S.E. 2d 444 (1978); *Church v. Hancock,* 261 N.C. 764, 136 S.E. 2d 81 (1964); *see,* Lee, North Carolina Family Law 3d, § 198, p. 414, § 201, p. 423 (1963). Since a separation agreement is treated just like any other contract under North Carolna law and since G.S. 1-75.4(5)(c), applies to "Local . . . Contracts," it is clear that the statute governs separation agreements as well as purely commercial contracts. In addition, other sections of the statute have been held to apply to domestic relations cases. In *Sherwood v. Sherwood,* 29 N.C. App. 112, 223 S.E. 2d 509 (1976), this court held that the abandonment of a spouse within the state was a "local act or injury" within the purview of G.S. 1-75.4(3) and therefore the North Carolina courts had *in personam* jurisdiction over the defendant. Since that section of the same statute applies to domestic relations cases, it follows that section (5) was designed to govern domestic relations cases as well. G.S. 1-75.4 was designed to extend jurisdiction over non-resident defendants to the full extent permitted by the Due Process Clause of the Fourteenth Amendment. *Dillon v. Numismatic Funding Corp.,* 291 N.C. 674, 231 S.E. 2d 629 (1977). Therefore, defendant's contention that the statutory provisions of G.S. 1-75.4(5)(c) should be narrowly construed so as to exclude actions based upon separation agreements is contrary to the legislative and judicial mandate, and is without merit.

[2] Defendant next contends that money payments are not a "thing of value" within the meaning of G.S. 1-75.4(5)(c).

The right of a married woman to support and maintenance is held in this State to be a property right. *Fuchs v. Fuchs,* 260 N.C. 635, 133 S.E. 2d 487 (1963). *A fortiori* it is an asset or "thing of value." See *Munchak Corp. v. Riko Enterprises, Inc.,* 368 F. Supp. 1366 (M.D.N.C. 1973). The separation agreement entered into by the parties was essentially a release of marital rights in exchange for money payments. *See Lee, supra,* § 187 at 379. Since the money payments were exchanged for, and in consideration of, an asset or a thing of value, money payments are clearly a "thing of value" as well. In *Munchak, supra,* the court noted that "there is

no need to engage in a laborious analysis of the meanings of the key terms in . . . the provisos set forth in § 1-75.4(4). To strictly construe the terms as set forth in those subsections so as to defeat in personam jurisdiction when such jurisdiction would be constitutionally permissible would conflict with the legislative and judicial mandate." 368 F. Supp. at 1371-72. Since defendant concedes that the exercise of jurisdiction in this case would not violate defendant's due process rights, the statutory terms of G.S. 1-75.4(5)(c) should be broadly construed. *See, Sherwood, supra.* We will therefore not engage in a laborious analysis of the term "things of value." Money payments are clearly a thing of value within the meaning of G.S. 1-75.4(5)(c).

We note that three cases from Wisconsin, which has a jurisdiction statute identical to G.S. 1-75.4, have held that money is not a "thing of value." However, an examination of the cases (*Nagel v. Crain Cutter Co.*, 50 Wis. 2d 638, 184 N.W. 2d 876 (1971); *Universal Foods Corp. v. William Inglis & Sons Baking Co.*, 440 F. Supp. 612 (E.D. Wis. 1977) and *Towne Realty, Inc. v. Bishop Enterprises, Inc.*, 432 F. Supp. 691 (1977) ) reveals that the holdings were based on due process considerations rather than an interpretation of the statutory language. In all three of these cases the defendant's sole contact with the state was a payment of money to the plaintiff in Wisconsin. Under these circumstances the exercise of jurisdiction would have violated the defendant's due process rights. In the case *sub judice* the payment of money was based on the property right of support and maintenance resulting from a marital relationship within this State, and the exercise of jurisdiction would not violate defendant's due process rights. A narrow construction of the term "things of value" would contravene the clear legislative intent. Therefore, we hold that money payments are a "thing of value" within the meaning of G.S. 1-75.4(5)(c).

[3] Defendant has conceded that the exercise of *in personam* jurisdiction by the district court fully comported with the due process requirements of the Fourteenth Amendment. The parties resided in North Carolina and were married and separated in North Carolina; the separation agreement was entered into in this State and the divorce was granted under North Carolina law. Clearly the defendant has "purposefully [availed] himself of the privilege of conducting activities within the forum state, [and has

---

---

invoked] the benefits and protection of its law." *Goldman v. Parkland,* 277 N.C. 223, 229, 176 S.E. 2d 784, 788 (1970). In addition, it should be noted that a recent Supreme Court case, *Kulko v. California Superior Court,* --- U.S. ---, 56 L.Ed. 2d 132, 98 S.Ct. 1690 (1978), indicates that asserting *in personam* jurisdiction in the case *sub judice* would comport with due process. In *Kulko,* the husband and wife entered into a separation agreement in New York. The wife obtained a Haitian divorce and then moved to California. The wife brought suit in California for modification of the custody and support provisions as set out in the separation agreement and as incorporated into the Haitian divorce decree. The California courts asserted jurisdiction. On appeal the Supreme Court reversed the California judgment, stating that suit should have been brought in New York. Although *Kulko* is essentially a "mirror image" of the case *sub judice,* the same propositions hold true—the proper forum is the state in which the separation agreement was entered into when one of the parties to the separation agreement is still a resident of that state. Therefore, the proper forum in this case is North Carolina.

The district court had *in personam* jurisdiction over the defendant pursuant to G.S. 1-75.4(5)(c). The order is affirmed.

Affirmed.

Judges PARKER and ERWIN concur.