Mascaro v. Mountaineer Land Group, LLC, 2006 NCBC 18

| | |
|---|---|
| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF MECKLENBURG | 06 CVS 3016 |

GREG MASCARO and
PHILLIP COHN,

               Plaintiffs,

      v.

MOUNTAINEER LAND GROUP, LLC;
GREYSON RIDGE DEVELOPMENT, LLC;
ROBERT WILLIAMS;
T. TODD MARTIN, III; and
SELWYN H. TURNER,

               Defendants,

      v.

TRACI ENGLAND MASCARO;
MYRA J. HAMBY; RYAN HAWKS;
JAMES "BUCK" HARLESS;
GEORGE HUDSPETH; STEPHEN
HUDSPETH; FRANK MASCARO; JUANITA
MASCARO; MOUNTAINEER REAL
ESTATE GROUP, LLC;
GOLF SOURCE INTERNATIONAL, LLC;
HUDSPETH FAMILY PROPERTIES, LLC;
HUDSPETH FAMILY PARTNERS, LLC;
HUDSPETH EQUIPMENT RENTAL, LLC;
HUDSPETH LAND MANGEMENT &
DEVELOPMENT GROUP;
MOUNTAINEER, TARHEEL VOLUNTEER,
LLC; WORLD GOLF ACADEMY, LLC;
DALE HUFFMAN; and
CAROLINA SUNDECK, INC.,

               Defendants.

**ORDER**

*Shuford, Hunter, & Brown, P.A. by A. Burton Shuford for Third-Party Plaintiff Mountaineer Land Group, LLC.*

*Hunton & Williams, LLP by T. Thomas Cottingham for Third-Party Defendant James H. "Buck" Harless.*

Diaz, Judge.

{1}    The Court heard this matter on 8 August 2006 on the Motion of Third-Party Defendant James H.

"Buck" Harless ("Harless") to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted.

{2}    For the reasons set forth below, and after considering the Court file, the written Motion, counsels' memoranda and oral arguments, the Court **DENIES** Harless's Motion to Dismiss for Lack of Personal Jurisdiction and **GRANTS**, *without prejudice*, Harless's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted.  Mountaineer Land Group, LLC shall have twenty (20) days from the entry of this Order to serve a further amended pleading.

## I.

## PROCEDURAL BACKGROUND

{3}    Plaintiffs Greg Mascaro ("Mascaro") and Phillip Cohn ("Cohn") filed their Verified Complaint in this action on 17 November 2005 in Cabarrus County Superior Court.

{4}    The Court assumed jurisdiction over this case because it is related to the receivership proceedings pending in *Greyson Ridge Development, LLC v. Mountaineer Land Group, LLC*, 05 CVS 6615 (Mecklenburg County Superior Court).  The latter case was transferred to the North Carolina Business Court and assigned to me as a complex business matter pursuant to an Order entered by the Chief Justice of the North Carolina Supreme Court on 15 November 2005.

{5}    Defendant Mountaineer Land Group, LLC ("Mountaineer") filed its Answer, Counterclaim, Crossclaim, and Third-Party Complaint ("Third-Party Complaint") on 3 April 2006.  Mountaineer's Third-Party Complaint joined Harless as a Third-Party Defendant.

{6}    Mountaineer filed an Amended Answer, Counterclaim, Crossclaim, and Third-Party Complaint ("Am. Third-Party Complaint") on 24 April 2006.

{7}    Pursuant to N.C.G.S. § 1A-1, Rule 12(b)(2) (2006) and N.C.G.S. §1A-1, Rule 12(b)(6) (2006), Harless filed a Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted on 6 June 2006.

{8}    Mountaineer filed a Reply to Harless's Motion to Dismiss for Lack of Personal Jurisdiction ("Mountaineer 12(b)(2) Reply") and a Reply to Harless's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted ("Mountaineer 12(b)(6) Reply") on 3 August 2006.  Harless filed a Consolidated Memorandum in Support of the Motions to Dismiss ("Harless Mem.") on 4 August 2006.

{9}    On 8 August 2006, the Court heard oral arguments on Harless's Motions to Dismiss.

{10}    Mountaineer filed a Consolidated Supplemental Reply ("Mountaineer Supplemental Reply") to Harless's Motions to Dismiss on 18 August 2006, and Harless filed a Supplemental Brief in Support of the Motions to Dismiss on 8 September 2006.

## II.

## FACTUAL BACKGROUND

### A.

### THE PARTIES

{11} Mountaineer is a North Carolina Limited Liability Company organized on 3 June 2004 to acquire and develop real property in Mecklenburg and Cabarrus Counties, North Carolina. (Mot. for Designation of Case as a Complex Business Case Ex. B § 1.1.)

{12} Harless is an eighty-six-year-old citizen and resident of West Virginia. (Harless Aff. ¶ 1, June 2, 2006.)

{13} Harless is the beneficiary of a deed of trust on land in Mecklenburg County, North Carolina. (*See* Mountaineer Supplemental Reply Ex. B.)

{14} The deed of trust was given as security for a loan Harless made in September 2005 to his grandson, M.K. Harless ("M.K."), and his business partners who were doing business collectively as Greyson Ridge Development, LLC ("Greyson"). (Harless Mem. 9-10.) Greyson, a defendant in this action, is an Alabama limited liability company doing business in North Carolina.[1] (Greyson Mots. to Dismiss, Answer & Countercls. ¶ 4.) The deed of trust encumbers a portion of a 66-acre tract of land previously owned by Mountaineer and transferred to Greyson in May 2005 as part of a failed settlement agreement between the two entities. (Mountaineer Supplemental Reply 10.)

{15} Harless is also the founder of International Industries, Inc. (Harless Aff. ¶ 4, June 2, 2006.) Ten years before this case, International Industries, Inc. bought and sold a division in North Carolina, Gilbert Hardwood Centers, Inc. (Harless Aff. ¶ 4, June 2, 2006; Harless Mem. 9.) Since the sale of Gilbert Hardwood Centers, Inc., Harless has neither owned nor operated a business in North Carolina. (Harless Aff. ¶¶ 2, 4, June 2, 2006.)

{16} Except as noted above, Harless has not: (a) registered to do business in North Carolina; (b) maintained any bank accounts in North Carolina; (c) employed any North Carolina residents; or (d) owned or leased any property in North Carolina. (Harless Aff. ¶¶ 2-4, June 2, 2006.)

### B.

### OVERVIEW OF THE FACTS

{17} Mascaro is the original member of Mountaineer. (Mot. for Designation of Case as a Complex Business Case Ex. B § 5.1.) In July 2004, Cohn and M.K. also became members of Mountaineer. (Mot.

for Designation of Case as a Complex Business Case Ex. C.)

{18}     In the fall of 2004, M.K. told Harless about his involvement in Mountaineer, and Harless attended a dinner in North Carolina.[2]  (Harless Aff. ¶¶ 13-15, June 2, 2006.)  People involved with Mountaineer and its land development project were in attendance at the dinner.[3]  (Harless Aff. ¶ 15, June 2, 2006; S. Vic Jones Aff. ¶ 7.)  Harless's attendance at the dinner was the only time that has he has visited North Carolina for either business or personal reasons since his involvement with Gilbert Hardwood Centers, Inc.  (Harless Aff. ¶ 17, June 2, 2006.)

{19}     Sometime in 2004, M.K. told Harless that he and his other partners had personally endorsed a $750,000.00 note for Mountaineer to acquire an option on certain property.  (Harless Aff. ¶ 5.)  In order to avoid having his grandson sued on this debt, Harless arranged a short-term loan to Mountaineer in late 2004.  (Harless Aff. ¶ 7, June 2, 2006.)

{20}     M.K. and his partners in turn executed a note ("the Note") in favor of Harless in Mobile, Alabama on 10 December 2004.  (Harless Aff. ¶ 9, Ex. 1, June 2, 2006.)  The Note required repayment of $750,000.00, plus 8% annual interest, by 6 March 2005.  (Harless Aff. ¶ 9, Ex. 1, June 2, 2006.)  The Note purports to be governed by Alabama law.  (Harless Aff. ¶ 9, Ex. 1, June 2, 2006.)

{21}     On 13 December 2004, Harless wired $750,000.00 to Mountaineer.  (Harless Aff. ¶ 10, June 2, 2006.)  Harless has not disputed that he wired the money directly to Mountaineer's North Carolina bank account.  (Mountaineer 12(b)(2) Reply 4.)

{22}     In repayment of the Note, Mountaineer transferred $5,296.70 to Harless once on 9 February 2005 and again on 22 February 2005.  (Third-Party Complaint ¶ 292; Harless Aff. ¶ 11, June 2, 2006.)  Mountaineer made two final payments, totaling $765,123.29, to Harless on 15 March 2005.  (Third-Party Complaint ¶ 292; Harless Aff. ¶ 11, June 2, 2006.)  Harless has not disputed that Mountaineer wired the payments directly from its North Carolina bank account.  (Mountaineer 12(b)(2) Reply 4.)

{23}     Mountaineer's receiver[4] ("the Receiver") alleges that Mountaineer was insolvent and was not paying its debts as they came due at the time of the transfers.  (Third-Party Complaint ¶ 293.)

{24}     Consequently, the Receiver alleges that the transfers from Mountaineer to Harless in February and March 2005 are voidable transfers under the North Carolina Uniform Fraudulent Transfer Act ("UFTA"), N.C.G.S. §§ 39-23.1 to -23.12 (2006).  (Am. Third-Party Complaint ¶¶ 319-327.)  In the alternative, Mountaineer seeks to impress the funds transferred from Mountaineer to Harless in February and March 2005 with a constructive trust in its favor.  (Am. Third-Party Complaint ¶¶ 319-327.)

{25}     In response to the Receiver's allegations, Harless filed a Motion to Dismiss for Lack of Personal

Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted on 6 June 2006. (Harless Mot. to Dismiss.)

## III.

## CONCLUSIONS OF LAW

### A.

### PERSONAL JURISDICTION

{26}   The Court must engage in a two-part inquiry to determine whether personal jurisdiction over a non-resident defendant is proper. *Better Bus. Forms, Inc. v. Davis*, 120 N.C. App. 498, 500, 462 S.E.2d 832, 833 (1995). First, the Court must determine whether North Carolina's "long-arm" statute, N.C.G.S. § 1-75.4 (2006), authorizes jurisdiction over the defendant. *Better Bus. Forms*, 120 N.C. App. at 500, 462 S.E.2d at 833. Second, the Court must determine whether the exercise of jurisdiction over the defendant is consistent with due process. *Id.*

### 1.

### THE NORTH CAROLINA "LONG-ARM" STATUTE

{27}   The North Carolina "long-arm" statute clearly authorizes jurisdiction over Harless.

{28}   N.C.G.S. § 1-75.4(5)(d) provides for personal jurisdiction over a non-resident defendant in any action that "relates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction." N.C.G.S. § 1-75.4(5)(d) (2006).

{29}   Money is a "thing of value" within the meaning of the North Carolina "long-arm" statute. *See Pope v. Pope*, 38 N.C. App. 328, 330-31, 248 S.E.2d 260, 261-62 (1978).

{30}   Harless concedes that he received money from Mountaineer. (Harless Aff. ¶¶ 10-11, June 2, 2006.) Further, Mountaineer alleges, and Harless does not deny, that this money was wired from a bank account in North Carolina. (Mountaineer 12(b)(2) Reply 4.)

{31}   Harless argues, however, that there is no evidence that the money was shipped *from North Carolina* "on his order or direction," and, therefore, the North Carolina "long-arm" statute does not authorize jurisdiction over him. (Harless Mem. 7.)

{32}   This argument is "untenable in light of our courts' policy of liberally and broadly construing statutory jurisdictional requirements in favor of finding personal jurisdiction." *Cherry Bekaert & Holland v. Brown*, 99 N.C. App. 626, 631, 394 S.E.2d 651, 655 (1990).

{33}   The fact that the Note directed Mountaineer to send money to Harless, (Harless Aff. Ex. 1, June 2, 2006), coupled with the fact that Mountaineer wired the money from a North Carolina bank account means that "the money paid was 'shipped from this State by the plaintiff to the defendant on his order or

direction.'" *Cherry Bekaert & Holland*, 99 N.C. App. at 631, 394 S.E.2d at 655 (quoting N.C.G.S. § 1-75.4(5)(d)). Whether Harless actually directed Mountaineer to send the funds *from North Carolina* is irrelevant to this determination. *See id.* Accordingly, North Carolina's long-arm statute authorizes jurisdiction over Harless for purposes of this case.

## 2.
### DUE PROCESS

{34}  Having concluded that the North Carolina "long-arm" statute authorizes jurisdiction over Harless, the Court must now determine whether the exercise of jurisdiction over him comports with the requirements of due process.

{35}  Exercising personal jurisdiction over Harless requires the Court to find "certain minimum contacts with [North Carolina] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945) (quoting *Miliken v. Meyer*, 311 U.S. 457, 463, 85 L. Ed. 278, 283 (1940)).

{36}  Further, "North Carolina courts have consistently held that the test for determining personal jurisdiction should be liberally applied, to vest our courts with the full jurisdictional powers available under federal due process." *Centura Bank v. Pee Dee Express, Inc.,* 119 N.C. App. 210, 212, 458 S.E.2d 15, 18 (1995) (citing *DeSoto Trail, Inc. v. Covington Diesel, Inc.*, 77 N.C. App. 637, 639, 335 S.E.2d 794, 796 (1985)).

{37}  "When a controversy is related to or 'arises out of' a defendant's contacts with the forum, the . . . 'relationship among the defendant, the forum, and the litigation' is the essential foundation of *in personam* jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 80 L. Ed. 2d 404, 411 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 53 L. Ed. 2d 683, 698 (1977)). This type of personal jurisdiction is often referred to as "specific jurisdiction." *Id.* at 414 n.8, 80 L. Ed. 2d at 411 n.8.

{38}  "When the suit does not arise out of a defendant's activities in the forum state, personal jurisdiction is present when there are sufficient contacts between the state and the defendant." *Havey v. Valentine*, 172 N.C. App. 812, 815, 616 S.E.2d 642, 647 (2005) (citing *Helicopteros*, 466 U.S. at 414, 80 L. Ed. 2d at 411). This type of personal jurisdiction is often referred to as "general jurisdiction." *Helicopteros*, 466 U.S. at 414 n.9, 80 L. Ed. 2d at 411 n.9.

{39}  In this case, there clearly is no basis for exercising general jurisdiction over Harless. For the reasons set forth below, however, the Court concludes that it may, consistent with the requirements of due process, exercise specific jurisdiction over Harless.

{40}  Specific jurisdiction exists when a defendant has "purposely directed its activities toward the

resident of the forum and the cause of action relates to such activities." *Wyatt v. Walt Disney World Co.*, 151 N.C. App. 158, 165, 565 S.E.2d 705, 710 (2002) (quoting *Frisella v. Transoceanic Cable Ship Co.*, 181 F. Supp. 2d 644, 647 (E.D. La. 2002)).

{41}   To determine whether it may assert specific jurisdiction over a defendant, the Court looks to "(1) the extent to which the defendant 'purposefully availed' [himself] of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Havey*, 172 N.C. App. at 815, 616 S.E.2d at 647.

{42}   The first part of this analysis requires that "there . . . be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws; the unilateral activity within the forum state of others who claim some relationship with a non-resident defendant will not suffice." *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 365, 348 S.E.2d 782, 786 (1986) (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298 (1958)).  This relationship between the defendant and the forum must be "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 501 (1980).

{43}   A single "contractual relationship between a North Carolina resident and an out-of-state party alone does not *automatically* establish the necessary minimum contacts with this State[.]" *Tom Togs,* 318 N.C. at 367, 348 S.E.2d at 786 (emphasis in original).  Nevertheless, "a single contract may be a sufficient basis for the exercise of *in personam* jurisdiction if it has a substantial connection with this State." *Id.*

{44}   In this case, the Receiver alleges that the transfers from Mountaineer to Harless in satisfaction of the Note are voidable transfers under the UFTA.  (Am. Third-Party Complaint ¶¶ 319-327.)  This claim, in turn, arises from Harless's agreement to loan Mountaineer $750,000.00 pursuant to the Note.

{45}   Harless insists that his motivation for executing the Note was to avoid having his grandson sued and that he had no intention of investing in Mountaineer's land development project.  Harless does not explain, however, why he did not provide the funds directly to his grandson instead of lending them to Mountaineer at 8% interest.  In any event, whatever Harless's motivation, there can be little doubt that, by executing the Note (and collecting on it with interest), Harless "purposefully availed himself of the privilege of conducting business [in this State] for the purpose of obtaining a financial benefit." *Godwin v. Walls,* 118 N.C. App. 341, 354, 455 S.E.2d 473, 483 (1995).  In doing so, Harless was entitled to invoke the benefits and protections of North Carolina law with respect to his rights and liabilities under the Note, regardless of whether the language of the Note requires the application of Alabama law.

{46}    Furthermore, Mountaineer's claims arise directly out of activities Harless directed toward North Carolina. Harless came to North Carolina at least once to lend his prestige and support to the Mountaineer land development project. His visit preceded the execution of the Note by only five months. Harless also made a separate loan to Greyson, another party to this case. As a result of this loan, Harless holds a deed of trust that encumbers a portion of a 66-acre tract of land in Mecklenburg County, North Carolina, that was previously owned by Mountaineer as part of the land development project. While these contacts do not directly relate to the Note, they do relate to the land development project funded, in part, through the Note, thereby establishing a nexus between Harless, the forum, and Mountaineer's business activities.

{47}    In addition, the Receiver's attempt to recover what it alleges to be a $775,716.69 fraudulent transfer made by Mountaineer has a "substantial connection" with this State because the amount of money involved is substantial and the issues raised by the alleged fraudulent transfer implicate important principles of North Carolina statutory law.

{48}    Moreover, where, as here, the Plaintiff is a resident of North Carolina, our courts require less extensive contacts than would be necessary if plaintiff were a stranger to the forum state, particularly where there is no hint of forum shopping. *Mabry v. Fuller-Shuwayer Co., Ltd.*, 50 N.C. App. 245, 250, 273 S.E.2d 509, 512 (1981).

{49}    Finally, the exercise of jurisdiction over Harless is constitutionally reasonable because it comports with "'fair play and substantial justice.'" *See Banc of Am. Sec., LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 699, 611 S.E.2d 179, 186 (2005) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 85 L. Ed. 2d 528, 543 (1985)). In making this determination, the Court considers (a) the interest of North Carolina; and (b) the convenience of the forum to the parties. *See id.*

{50}    This State has a "'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 85 L. Ed. 2d 528, 541 (1985) (internal citation omitted). This is particularly true where, as here: (a) the Plaintiff is a North Carolina resident; (b) the Defendant provided funds used to help finance the operation of a multi-million dollar land development project in this State; (c) the Note was repaid with funds wired from a North Carolina account; and (d) the fraudulent transfer claim involves an important question of North Carolina statutory law.

{51}    In light of this, and given Harless's previous contacts with this State, including his prior business activities related to Gilbert Hardwood Centers, Inc. and his ongoing status as a beneficiary under a deed of trust with respect to real property that was a part of Mountaineer's land development project, it is not

unfair to ask Harless to come to North Carolina to defend this claim. On the other hand, Alabama, where the parties executed the Note, and West Virginia, where Harless resides, have no compelling interest in the resolution of a claim involving the interpretation of North Carolina statutory law.

{52} Harless has not alleged any substantial reason why the exercise of such jurisdiction would be unfair and I find that North Carolina is a convenient forum for this litigation, in terms of the witnesses and location of the relevant events. The claim at issue turns, in part, on Mountaineer's alleged insolvency and its intent at the time it repaid the Note. Virtually all of the evidence as to these issues is likely to be found in this State, not in Alabama or West Virginia.

{53} In sum, because: (a) Harless purposefully availed himself of the privilege of conducting activities in North Carolina; (b) Mountaineer's claims arise out of Harless's activities directed at the State; and (c) the exercise of personal jurisdiction over Harless is constitutionally reasonable, the Court **DENIES** Harless's motion to dismiss for lack of personal jurisdiction.

**B.**

**FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

{54} The essential question on a motion to dismiss pursuant to Rule 12(b)(6) "is whether the complaint, when liberally construed, states a claim upon which relief can be granted on *any* theory." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001) (citation omitted) (emphasis in original). On a motion to dismiss, the complaint's material factual allegations are taken as true. *Id.* (citing *Hyde v. Abbot Labs.*, 123 N.C. App. 572, 575, 473 S.E.2d 680, 682 (1996)).

{55} "Dismissal is proper, however, 'when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Wood v. Guilford County*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (quoting *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985)) (emphasis added).

{56} Since the Third-Party Complaint, on its face, reveals the absence of facts sufficient to make out a good claim, dismissal under Rule 12(b)(6) is proper.

{57} The Receiver alleges that the transfers from Mountaineer to Harless in February and March 2005 are voidable transfers under the UFTA, without citing a specific section of the statute. (*See* Am. Third-Party Complaint ¶¶ 319-327.) In its replies to Harless's Motion to Dismiss, however, the Receiver argues that its UFTA claim arises under N.C.G.S. § 39-23.4(a)(1). (Mountaineer 12(b)(6) Reply 4-6; Mountaineer Supplemental Reply 14-23.)

{58} Harless argues that the Third-Party Complaint states a claim under N.C.G.S. § 39-23.5(b) exclusively. Under that statute, "a transfer . . . is voidable as to a creditor . . . if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent." N.C.G.S. § 39-23.5(b).

{59} Under N.C.G.S. § 39-23.9, claims under N.C.G.S. § 39-23.5(b) are "extinguished" unless an action is brought "within one year after the transfer was made or the obligation was incurred." N.C.G.S. § 39-23.9(3). It is uncontested that Mountaineer repaid Harless in February and March 2005, (Third-Party Complaint ¶ 292; Harless Aff. ¶ 11, June 2, 2006), and that an action was not brought against Harless until April 2006. Since an action against Harless was not brought within the one-year statute of limitations in N.C.G.S. § 39-23.9(3), the Third-Party Complaint cannot state a claim under N.C.G.S. § 39-23.5(b).

{60} Since, however, the inquiry on a motion to dismiss under Rule 12(b)(6) is "whether the complaint, when liberally construed, states a claim upon which relief can be granted on *any* theory," *Oberlin*, 147 N.C. App. at 56, 554 S.E.2d at 844 (quoting *Barnaby v. Boardman*, 70 N.C. App. 299, 302, 318 S.E.2d 907, 909 (1982) (emphasis in original), and the Receiver does not allege a cause of action under any specific section of the UFTA, the Court analyzes Harless's Motion to Dismiss for Failure to State a Claim under the assumption that the Third-Party Complaint, consistent with the Receiver's arguments, attempts to state a claim under N.C.G.S. § 39-23.4(a)(1).

{61} Under N.C.G.S. § 39-23.4(a)(1), a "transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if *the debtor* made the transfer or incurred the obligation . . . *[w]ith intent to hinder, delay, or defraud any creditor of the debtor*." N.C.G.S. § 39-23.4(a)(1) (emphasis added).

{62} The debtor's state of mind is a crucial element of claims arising under N.C.G.S. § 39-23.4(a)(1), *see Norman Owen Trucking, Inc. v. Morkoski*, 131 N.C. App. 168, 506 S.E.2d 267 (1998) (holding that trial court erred in failing to grant defendant's JNOV motion on the issue of fraudulent conveyance where the plaintiff produced insufficient evidence of the debtor's intent to defraud its creditors), and the failure to plead it is not a mere technicality. Consequently, any complaint alleging a violation of N.C.G.S. § 39-23.4(a)(1) that does not make allegations regarding the debtor's state of mind reveals, on its face, the absence of facts sufficient to make a good claim.

{63} The Receiver's Third-Party Complaint fails to allege that Mountaineer repaid Harless with the intent to hinder, delay, or defraud any of its creditors. (*See* Am. Third-Party Complaint ¶¶ 319-327.) Since the Third-Party Complaint does not make allegations regarding the debtor's state of mind, it fails to state a claim under N.C.G.S. § 39-23.4(a)(1).

{64} As an alternative to its claims under the UFTA, the Receiver seeks to impress the funds transferred

from Mountaineer to Harless in February and March 2005 with a constructive trust in its favor. (Am. Third-Party Complaint ¶¶ 319-327.)

{65}     A constructive trust "is imposed to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust." *Roper v. Edwards*, 323 N.C. 461, 464, 373 S.E.2d 423, 424-25 (quoting *Wilson v. Crab Orchard Dev. Co.*, 276 N.C. 198, 211, 171 S.E.2d 873, 882 (1970)).

{66}     The Third-Party Complaint does not allege that Harless committed fraud or breached a duty he owed to Mountaineer. The Third-Party Complaint also fails to state a claim under N.C.G.S. § 39-23.4(a) (1), and it does not allege any other circumstance making it inequitable for Harless to retain the funds Mountaineer transferred to him in February and March 2005. Consequently, the Third-Party Complaint has failed to state any claim supporting the imposition of a constructive trust.

{67}     In its Supplemental Reply, the Receiver sought leave to amend its pleading should the Court be inclined to grant Harless's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted. In my discretion, the Court **GRANTS**, *without prejudice*, the Motion to Dismiss as to the claims alleging a fraudulent transfer and the imposition of a constructive trust. The Receiver shall have twenty (20) days from the entry of this Order to serve an amended pleading as to these claims.

## CONCLUSION

{68}     For the reasons set forth above, the Court **DENIES** Harless's Motion to Dismiss for Lack of Personal Jurisdiction and **GRANTS**, *without prejudice*, Harless's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted. Mountaineer Land Group, LLC shall have twenty (20) days from the entry of this Order to serve an amended pleading.

This the _____ day of October, 2006.

---

[1] Greyson owned a 25% interest in Mountaineer and is the lead plaintiff in *Greyson Ridge Development, LLC v. Mountaineer Land Group, LLC*, 05 CVS 6615 (Mecklenburg County Superior Court), the case first transferred to the North Carolina Business Court and around which all other cases arising out of Mountaineer are consolidated.

[2] At M.K.'s request, Harless wrote a letter to the White House requesting the President's attendance at the dinner. (Harless Aff. ¶ 18, June 2, 2006.) The President did not attend the dinner. (Harless Aff. ¶ 18, June 2, 2006.)

[3] Mountaineer alleges that several people at the dinner spoke in celebration of Harless's "agreement to join in support [of Mountaineer's land development project] financially." (S. Vic Jones Aff. ¶ 9.) Mountaineer also alleges that Harless "stood (for a toast) and assured everyone there that . . . the project had his full support and financial backing." (S. Vic Jones Aff. ¶ 10.) Harless states that, at his age, he had no interest in becoming involved in any of Mountaineer's investments and that he has never stated

otherwise.  (*See* Harless Aff. ¶ 16, June 2, 2006; Harless Aff. ¶ 4, Aug. 10, 2006.)

[4] Shuford, Hunter & Brown, P.A. was appointed Mountaineer's receiver by Order of the Honorable Richard Boner, Superior Court Judge presiding at the 12 September 2005 Civil Session of Mecklenburg County Superior Court.  The Court ordered dissolution of Mountaineer on 19 December 2005.